Collet, J.,
delivered the opinion of the court:
It is urged for the complainants that the court of law, at the trial of the action against the indorsers, on the authority of the case of Bond v. Freeman, 5 Mass. 170, determined that where the maker of a note transferred all his property to the indorsers for their indemnity, or a. sufficiency for that purpose, they could not object to a recovery against them by the holder of the note that they had not notice of non-payment by the maker, for the notice *504 was to enable the indorser to secure himself, if ho could, from the maker, and that when *he had before secured himself, notice could be of no service; that the deed of trust to Bond was considered as either a sufficient indemnify to the indorsers, or as containing all the property of the maker; that on these grounds a recovery was had against the indorsers. That this being the law, as laid down by the court, on its afterward appearing, by the decree for Harness and the salo of the premises contained in the mortgage and deed of trust, that the property conveyed by the deed of trust was not sufficient to indemnify the complainants, the indorsers are now entitled to relief in this court, by an order for a new trial at law or a final decree here.
The mortgage to Harness was made in 1817 ; it was not recorded until May, 1819. The deed of trust to Bond was made in October, 1818, for the indemnity of the indorser; it included the land mortgaged to Harness, and other property, part of it personal, of which the complainants made six hundred dollars. The complainants relied on the want of notice of the mortgage of Harness as a defense to his suit, but the court on the hearing decreed for Harness, which must have been on the grounds that the complainants,when the deed of trust was made, had either actual or constructive notice of the mortgage. If they knew of Harness’ mortgage, when their trust deed was made, or at the time of the trial at law, why did they not then proceed and insist on it? The-deed of Harness was recorded in May, 1819 ; the trial was in November, 1820, eighteen months after. Constructive notice of this mortgage must have been a knowledge of such facts, by the indorsers or their agents, relating to the mortgage, as would have led prudent men to an actual knowledge of it, so that the indorsers or their agents must have been chargeable with some negligence, at least, in not relying on this mortgage as a defense at law. It is suggested that in equity the indorsers were trustees of the property contained in the trust deed, that it really belonged to Mr. Waddle, the maker of the note, and that the indorsers, as trustees, were bound not to do anything which might lessen the value of the trust fund. This is a poor excuse. Where a mortgagee, confiding in the mortgagor, or as his friend to save his credit and feelings, does not record his mortgage, and the mortgagor *is base enough to convey or mortgage over him to defeat his mortgage, are those to whom he conveys or mortgages undor obliga* *505 fions to him to do all they can to aid him in committing such a fraud ?
The action at law was tried in 1820 ; it is a fact known to us all, without proof, that real property in general, especially if improved, ■would at'that time readily sell for one hundred per cent, more than in 1822, or for several years after. The decree for Harness was in 1823. When the property was sold by Bond, the trustee, we do not know. If the price of land had not fallen after 1820, there might have been no loss. If this occasioned the loss, the •equity of the bank to retain is at least as good to retain as that of the indorsers to recover back the amount of notes discounted on their credit.
The value of the property contained in the trust deed was a matter investigated on the trial at law; if this mortgage was known of by the indorsers at that time, this court can not relieve them. Why did they not produce it, or move for a new trial to ■obtain time for its production ? It seems probable that they either knew of it, or that their want of knowledge-was from negligence. In cither cáse no relief should be granted by this court. 4 Ohio, 464; 3 Johns. Oh. 750; 7 Cr. 332.
If the inquiry,'"on the trial at law, was not only as to the sufficiency of the property in the trust deed, but whether it was all ■of M. Waddle’s property, the cause may have gone off on that ground; then, according to the opinion of the court of law, its value would.make no difference. If all is secured, why give notico to the indorser? He can get no, more.
The court-of law had the right finally to try, and we have no right to inquire whether they erred or not. They had the right to determine whether notice was necessary or not, what was an •excuse for the want of notice, and what was sufficient proof of that excuse. They did so oh the trial, and on a motion for a new trial were satisfied with their determination. Again, M. Waddle was ip such circumstances that before complainants would indorse his note he had to indemnify them. The indorsers paid the notes; he was insolvent. It is probable, then, that the bank advanced ^the amount of the note to M. Waddle, on the credit of the indorsers alone. .The bank intended to give the indorsers immediate notice of the non-payment of the note, but by the mistake or negligence of their agent, they did not receive notico .until two days after the note became payable; no injury was sus *506 tamed by the indorsers in consequence of this delay. Now, could justice be advanced by taking this money from the bank and giving it to these indorsers? Has not the bank as much equity to-retain it as the indorsers to receive it ?
Anciently an indorser was compelled to show a loss from not receiving notice, before he could successfully insist on a want of notice; now, the law presumes an injury, and will not suffer the presumption to be rebutted except in af ew cases. Chit. on Bills, 214, 215, 552. And this is well on many accounts; it protects more persons who would have suffered by a want of notice and could not prove the injury, than it discharges of those who suffered no loss. If an indorser, who has not received notice on the day the rule requires, but who has suffered no loss thereby, should be adjudged to pay, would he, have an equity"to recover back? Unless the judgment was obtained by fraud, I should much question it.
This case differs from that in 2 Vern. 116, of the executor, who-informed the creditor of the testator that he had a mortgage securing a debt to the testator of three hundred pounds, on which information the creditor recovered a judgment against the executor for'.the debt to be levied of his goods. Afterward, it appeared that the premises were covered to their full value by prior mortgages ; the executor was relieved; he had not caused the creditor to let the testator have the consideration of his debt; he had done nothing hut disclose the fact of the existence of the mortgage as a source of ultimate payment to the creditor. The creditor had in consequence sued him. The costs, if the chancellor chose, could be thrown on the executor. Could an honest man have received of the executor this judgment so recovered?
Upon the whole, we are of opinion that this bill must be dismissed.