Avery, J.
Enoch Morgan, a citizen of Massachusetts, came out to Ohio sometime previous to the 8th of February, 1803, and on that day purchased of Jacob Burnet, James Findlay, and William McMillan, the tract of land now in controversy. He took a deed in fee simple for the land, and at the same time executed to the grantors a bond and mortgage, to secure the payment of §320. He returned soon afterwards to Massachusetts, and died there on the 7th of January, 1804, leaving three children his only heirs. The mortgage debt remaining unpaid, a bill to foreclose the equity of redemption was filed in the court of common pleas of Hamilton county, on the 8th day of November, 1814. This bill was in the name of Burnet and Findlay, survivors of McMillan and William H. Harrison, who had purchased McMillan’s interest, and taken an assignment from his executors. This suit was brought against the three children *541 of Enoch Morgan, who were all minors at the time, and the' only persons named as defendants. They were all then, and still are, residents of Massachusetts. At the April term, 1816, a decree passed against them foreclosing their equity of redemption, unless they should pay, by the first of August then following, the sum found due by the court upon the mortgage.
Numerous points have been made and discussed in the argument, by the counsel upon both sides; and the court have given attention to them all, though they need not all be here particularly adverted to.
Against the kind of proceeding adopted by the complainants, to wit, a bill to foreclose the equity of -redemption, and against the form of the decree as it was actually rendered, no valid objection, in the opinion of the court, can be urged. In the exercise of ordinary chancery powers, such relief as was actually given, might, at the time, upon a sufficient case made, have been granted in favor of a mortgagee. No remedy furnished to him in a court of law, whether by seire facias or in any otjier mode, unless made exclusive, by statute, could deprive him of his right to go into equity. The statute (1st Chase 685) m force when the proceedings were instituted, and which gave to the court of common pleas general chancery jurisdiction, contained no clause that could be understood as denying the remedy, by a bill to foreclose. And a decree of foreclosure, instead of a decree for the sale of the mortgaged premises, was valid at the time ; though it was afterwards determined that such a decree could not be rendered by the court, if the debt were less than two-thirds of the value of the mortgaged premises. 1 Ohio Rep. 106; Higgins v. West, 5 Ohio Rep. 654. Such a decree would at all times have been held valid and binding until reversed upon a bill of review, and could not therefore have been properly excluded from the jury, upon the objection which has been above considered. But whether the decree in the present case, and the proceedings in chancery offered in evidence, are to be deemed valid, and- *542 ¡sufficient to uphold the title claimed under them, depends upon uther facts and considerations which will be noticed hereafter.
On the trial of the ejectment before the court of common pleas, the plaintiff introduced, without objection, his title deed and the other evidence necessary to establish his right to a recovery. When the defendant was called upon for his proof, he offered, first, the bond and mortgage before spoken of. To ¡the admission of these papers in evidence the plaintiff objected, but they were admitted by the court. And it is now claimed that they were properly admitted, upon the ground that their ■execution was sufficiently proved, and that they must be regarded, either as independent evidence of legal title in the mortgagees, if the proceedings before the foreclosure were void, or as part of the record, if they were not void. The papers .appeared, upon inspection, to have been executed more than forty years before. Now, in order to establish the genuineness of the instruments, and in support of the presumption arising from their antiquity, as well as to show a disposition of the instruments consistent with the claim of the mortgagees, proof was given of the signature of one of the subscribing witnesses and of his death; and proof, further, as to the other subscribing witness, also long since dead — that he bore the name of a person who was the grandfather of the witness upon the stand, and it was a part of the family history, that the grandfather .resided in Cincinnati, about the date of the documents, but that he was long since dead. Proof was further given, of the hand writing of the officer before whom the mortgage appeared to have been taken; of the loss of the documents, and of their having been recently found amongst the papers in a case in the ••common pleas, where the same William H. Harrison was one of the parties. Furthermore, these documents bore minutely the description of the bond and mortgage, upon which was founded the above mentioned bill for a foreclosure, and would, ■therefore, as papers belonging to the clerk’s office, be properly left by the mortgagees amongst the files of the common pleas.
*543 Upon the supposition that the bill in chancery, and all the subsequent proceedings, are a nullity, not operating to extinguish the bond and mortgage in a higher security, I can discover no principle which would justify their rejection by the court, or prevent their being received as evidence of legal title in the mortgagees. But that question need not here be determined ; and, waiving any further comments upon it, we will proceed to consider whether they were admissible upon another ground, that is, as a part of the records in the chancery suit.
It is insisted, that they were not admissible in the last mentioned view; because,
First: In the attempt to foreclose the mortgage, the court never acquired jurisdiction; that all their' proceedings in the case, therefore, were void, and their record no evidence; and,
Secondly: If the proceedings are not void, these loose papers are not on record, and consequently are not to be received as record evidence.
The defendants to the chancery suit all resided in Massachusetts, when the proceedings against them were commenced, and until after they were terminated. Jurisdiction over the person, therefore, could not have been obtained by the issue and service of a subpoena, the usual mode of bringing defendants into court. But our statute had then, as it has had always since, a provision for making a non-resident a party defendant, and subjecting him to the operation of a decree, without personal service by subpoena or otherwise. The act in force at the date of these proceedings, was the act directing the mode of proceeding in chancery, passed February, 1810, (1st Chase 685,) and the act supplementary thereto, passed December, 1812, (2d Chase 786.) By the original act it was provided, that “ if any person shall file a petition against a defendant or defendants, residing in this state, in which it shall be proper or necessary to join other defendants, residing out of the state, whether in the United States or any other country, the complainant, on service of notice on such other defendant or defendants, or inserting, after such petition is filed, the notice *544 aforesaid, either in such newspapers, for nine weeks successively, or in any other manner, as the court shall direct,” was authorized to proceed in his suit. And upon proof that such notice had been given personally, or by advertisement as aforesaid, the non-resident defendants were held to be in court, and subject .to all the orders and decrees in the case. By the supplemental act, where all the defendants were out of the state, the chancery courts might direct any mode of giving notice to the non-residents, which should be consistent with the usages and practice of courts of chancery. The original act gave to the courts power to acquire jurisdiction over non-residents, (even though residents of a foreign country,) for all the purposes contemplated in the act, by the mere publication, as it will be observed, of notice in the newspapers.
It was indispensable that something of the kind should be done — that some practice should be established, by which nonresidents owning lands.here, or some interest in them, should be made parties to suits respecting such lands, without the service of process; for officers could not serve process without the limits of the state. An act, therefore, was passed, for such and other cases, directing publication (perhaps the court ought to say in what paper) for nine weeks; but it named cases only, where the non-residents were but a part of the defendants. Probably under that act a bill might, in most cases, be so shaped as to conform literally to the terms of the act. This could often be done, either by joining some as defendants, who could as properly be made complainants, or by naming a resident defendant, who could not otherwise be an indispensable party to the-suit. But’if in case of a bill filed under that act, it should appear that all the defendants were non-residents, there seems to me to be no sufficient reason for denying that the court had acquired jurisdiction; more especially when the bill is for the foreclosure of a mortgage. . But if jurisdiction could not have been obtained under the original act, the supplementary act must be held sufficient for that purpose. This latter does not seem designed to take away any right secured under the former *545 provision, which, authorized nine weeks publication of notice; nor does it expressly repeal any part of the act; its object, on the contrary, as it appears, is to give larger power and discretion to the court, in all cases requiring jurisdiction over nonresidents.
If, then, in the chancery proceedings under examination, there was, after the filing of the petition, an actual newspaper publication of notice for nine successive weeks, and proof furnished of such publication, the court rightfully obtained and exercised jurisdiction in the case. That there was such publication and proof, appears from the facts set out in the bill of exceptions; if such facts may be established by the original papers and entries, without the production of the book of records, or an authenticated transcript from it.
Can such papers and entries be given in evidence ? It is shown in the case now before the court, tha,t no record was in fact kept, or rather that no complete record was ever made up. by the clerk. If such a record were in existence, it would be itself the only evidence of facts required by law to be put upon record. But when no complete record has been made, it has been held that journal entries may be given in evidence; and that the contents of petitions and papers which had once been filed, might, if lost or destroyed, be proved by parol. 5 Ohio Rep. 548, Young v. Buckingham and others. It may, I think, be considered as settled by the practice and adjudications of this court, that the journal and docket, and all the papers on file properly connected with a case, are admissible in evidence where no other record exists.
It will appear, it must be admitted, upon an examination of the bill of exceptions in the present case, that many of the entries, in fact, nearly all of the clerk’s entries, are but short memoranda; but if they furnish the means, as we consider they do, of determining with certainty what has been done in the court, a complete record, if directed, could be made up from them. It must be remembered that no inconsiderable' *546 portion of journal entries are usually copies from form books; and, therefore, from brief minutes, with the aid which can be derived from the writ, declaration, and other papers on file, the clerk cannot often be at a loss'in making up the perfect record. Amongst the earliest published decisions of this court, (Harvey v. Brown, 1 Ohio Rep. 268,) the daily entries upon the minute book were treated as memoranda, from which the record might be made up; and a short entry in these words, “judgment,” etc., was enough to authenticate a complete record to be made up by the clerk, after the rising of the court.
The papers and documents, therefore, such as the bill in chancery; the bond and mortgage, with the transfer indorsed thereon ; the written decree; the minutes; issue; docket, etc., appearing in the bill of exceptions, were properly offered and received upon the trial before the court of common pleas as record evidence.
After the evidence was decreed, the court of common pleas charged the jury, that notice would be presumed to have been given to the defendants, until they proved that they had not been served nor notified. No ?rror is perceived in this charge to which the plaintiff in error can object. The charge that notice would be presumed, is based upon the distinction taken between certain inferior courts of limited jurisdiction and courts ■of general jurisdiction. The first are required to show that jurisdiction was rightfully exercised;, but as to courts of general jurisdiction, the record being silent upon the subject, it will be presumed that jurisdiction existed. 2d Howard’s Rep. •'341. The court of common pleas is a court of general jurisdiction, and its proceedings must be viewed under the force of that presumption. The records of that court are to be taken as true, if they contain the statement that service of process has been made upon the defendant: that defendant came into court and entered his personal appearance, or that he confessed a final judgment; and also when they state that publi- ■ cation of .notice has been proved. All these statements, if *547 found upon the record, it will doubtless be admitted, are to be received as true, and not to be contradicted by proof.
Numerous other objections were made to the charge as given to the jury, and as to the refusal of the court to charge as requested, but it has not been thought necessary for the decision of the case, further to notice them, as none of the objections are deemed to be valid.
On the return of the verdict, as it was against the plaintiff, he moved for a new trial, but his motion was overruled, and a judgment entered on the verdict.
To this judgment, a writ of error was taken to the supreme court for Hamilton county, where it was affirmed; and to review this judgment of the supreme court, the present writ of error is presented.
The bill of exceptions, which is before us, contains all the facts of the case.
The bill in chancery, which was in evidence to- the jury, the bond and mortgage, the journal and docket entries, the written decree, and other evidence, all taken together, can leave no doubt upon the mind, that there had formerly been, as was claimed upon the trial, a suit pending in chancery, between the complainants and respondents for the foreclosure of the equity of redemption; that the requisite nine weeks’ notice by publication had been given, and a final decree for the foreclosure rendered.
Upon the whole, we are of the opinion, that under the general chancery act of 1810, and the act supplementary of 1812, the court of common pleas, in the case before them, against the heirs of Enoch Morgan, acquired jurisdiction of the persons of the respondents: that our courts of common pleas are courts of general jurisdiction; and as to them, whenever an attempt is made to impeach, collaterally, their judgments, decrees and proceedings, the existence of jurisdiction will be presumed, their records being silent upon the subject; that they will be held binding in such ease against minors, for whom no guardians have been appointed, as well as against others, and *548 that where no record of the proceedings of such court have been made up, the journal and docket entries, and all the files properly connected with the case, are admissible in evidence to show such proceedings.
We hold, therefore, that upon the trial in the action of eject ment, there was proof to show that the legal title of the premises was in the mortgagors, the complainants to the bill in chancery; and that the defendant in ejectment was so connected with the legal title, that he could set it up to defeat the action of the plaintiff; consequently, the judgment of the supreme court sustaining the judgment of the common pleas, will be affirmed.