KOSTER, APPELLANT, *v.* BOUDREAUX, APPELLEE, ET AL.

(No. L-82-248—Decided December 23, 1982.)

*Mr. Jeffrey Goldstein* and *Mr. Lorin Zaner,* for appellant.
*Mr. Richard Farrar,* for appellee.

DOUGLAS, J. This case comes before the court on appeal from judgment entered by the Lucas County Court of Common Pleas in which appellant's complaint was dismissed with prejudice after that court denied appellant's motion for summary judgment.

The record before us reveals that on February 13, 1976, Robert A. Boudreaux and Marilyn A. Boudreaux, as husband and wife, purchased the following described real property: "Lot number twenty-five (25) in White Cliffes Plat I, a Subdivision in the City of Toledo, Lucas County, Ohio." Mr. and Mrs. Boudreaux took title to the above-described real property by an "ESTATE BY THE ENTIRETIES WITH SURVIVORSHIP DEED" which was duly recorded in the Lucas County Recorder's Office.

On April 13, 1978, appellant, Ray Koster, obtained a default judgment

1

against Mrs. Boudreaux, the appellee herein, in the amount of $12,500. Pursuant to said judgment, appellant caused a lien to be placed on record against real estate owned by appellee and her husband. Appellant, in an effort to enforce said judgment lien, filed a complaint in the Lucas County Court of Common Pleas on January 19, 1982, to foreclose on the above-described real property. Named as defendants in said complaint were Robert Boudreaux, Marilyn Boudreaux, and First Federal Savings and Loan Association ("First Federal"), mortgagee of said property.

First Federal filed its answer on January 28, 1982, and on April 7, 1982, Robert and Marilyn Boudreaux filed their answer. Also, on this date, appellee Marilyn Boudreaux filed a counterclaim. On May 11, 1982, appellant filed a motion to strike Robert Boudreaux from the complaint and to dismiss him from the cause of action. The trial court granted appellant's motion on May 12, 1982, and accordingly, Robert Boudreaux was dismissed from the foreclosure action.

The appellant then moved for summary judgment as to appellee Marilyn Boudreaux on June 1, 1982, and on June 11, 1982, appellee filed her opposition to appellant's motion for summary judgment. On June 17, 1982, the trial court denied appellant's motion for summary judgment and dismissed appellant's complaint with prejudice, stating:

"* * * Plaintiff [appellant] seeks in his complaint the relief of foreclosure of his judgment lien against certain real estate belonging to the defendant [appellee] Marilyn Boudreaux and her husbank [sic] Robert Boudreaux. Such relief must be denied the plaintiff [appellant] because the plaintiff [appellant] has obtained a judgemnt [sic] only against the defendant [appellee] Marilyn Boudreaux and the lien sought to be foreclosed in this cause is filed against real estate held by Marilyn and Robert Boudreaux as an estate by the entireties. Since the judgment is not against both Maril8n [sic] and Robert Boudreaux the plaintiff's [appellant's] lien cannot be foreclosed. * * *"

Appellant filed his notice of appeal on July 8, 1982. However, this court dismissed that appeal on August 5, 1982, because fewer than all the claims of the parties had been adjudicated in the court below, as the trial court had not ruled on appellee's counterclaim. Further, absent the adjudication of all parties' claims, the trial court had not made an express determination that there was no just cause for delay. Civ. R. 54(B). The trial court amended its order dismissing appellant's complaint on August 10, 1982, to include an express determination that there was "no just reason for delay." It is from that amended judgment entry which appellant appeals, stating as his sole assignment of error:

"I. The court of common pleas erred by granting defendant-appellee's motion for summary judgment."

The question presented us is indeed a narrow one, and our holding is based only upon the factual issue which this case presents. Thus, we must decide whether the trial court erred in holding that, as a matter of law, a judgment creditor of a married individual is precluded from enforcing that judgment by an action in foreclosure against real property which the individual debtor holds with his/her spouse in an estate by the entireties, where the judgment evidencing the debt of an individual spouse and the resulting foreclosure action to enforce that debt both occur subsequent to the date of the marriage and to the date on which the spouses were granted an estate by the entireties.

In answering this question, we are faced with the necessary task of interpreting R.C. 5302.17, which provides in relevant part:

"A deed conveying any interest in real property to a husband and wife, and in substance following the form set forth in this section, when duly executed in ac-

cordance with Chapter 5301. of the Revised Code, creates an estate by the entireties in the grantees, and upon the death of either, conveys such interest to the survivor, his or her separate heirs and assigns."

The statute also sets forth a sample deed, which provides that real property is granted to the spouses as "* * * husband and wife, for their joint lives, remainder to the survivor of them * * *."[1]

Appellant notes that the legislature, in enacting R.C. 5302.17, did not indicate what effect, if any, the estate by the entireties would have on the rights of an individual spouse's creditors. Our task is further complicated by the fact that there is no official comment by the legislature from which we might have gained insight as to the intent of the legislature in enacting this statute. See *In re Thomas* (N.D. Ohio 1981), 14 Bankr. 423, 425. Appellee has directed this court to the recently decided case of *Donvito* v. *Criswell* (1982), 1 Ohio App. 3d 53, and our independent research has indicated that this is the only reported Ohio decision which specifically addresses the question before us. Because of the paucity of case law which exists on this question, we believe that the issue before the court merits discussion.[2]

---

[1] The full text of R.C. 5302.17 reads:

"A deed conveying any interest in real property to a husband and wife, and in substance following the form set forth in this section, when duly executed in accordance with Chapter 5301. of the Revised Code, creates an estate by the entireties in the grantees, and upon the death of either, conveys such interest to the survivor, his or her separate heirs and assigns.

"ESTATE BY THE ENTIRETIES WITH SURVIVORSHIP DEED

".............. (marital status), of .............. county, .............. for valuable consideration paid, grant(s), (covenants, if any), to .............. and .............., husband and wife, for their joint lives, remainder to the survivor of them, whose tax-mailing address is ............., the following real property:

"(Description of land or interest therein and encumbrances, reservations, and exceptions, if any)

"Prior Instrument Reference: Volume .............., Page .............., wife (husband) of the grantor, releases all rights of dower therein.

"Witness ............. hand this ............. (Execution in accordance with Chapter 5301. of the Revised Code)

"A husband and wife who are the sole owners of real property as joint tenants or tenants in common, may create in themselves an estate by the entireties in such real property, by executing a deed as provided in this section conveying their entire, separate interests in such property to themselves.

"A spouse who is the sole owner of any real property may create in himself or herself and the other spouse an estate by the entireties in such real property, by executing a deed as provided in this section conveying his or her entire interest in such property to themselves. The provisions of this paragraph shall be applied retroactively to cover transactions occurring on or after February 9, 1972.

"When an estate by the entireties vests in a surviving spouse, the transfer of the interest of the decedent spouse may be recorded by presenting to the county auditor, and filing with the county recorder either a certificate of transfer as provided in section 2113.61 of the Revised Code, or an affidavit or certificate of death, reciting the names of the spouses, the residence of the surviving spouse, the date of death of the decedent spouse, and a description of the property. The county recorder shall make index reference to any certificate or affidavit so filed in the record of deeds."

[2] For a general discussion of the estate by the entireties, see 4 Thompson on Real Property (1979) 58-92, Sections 1784-1792; 4A Powell on Real Property (1982) 683, Chapter 52. For a thorough review of the recognition and treatment of the estate by the entireties, see Phipps, Tenancy by Entireties (1951), 25 Temp. L. Q. 24.

Articles which specifically address the estate by the entireties in Ohio include: Yzenbaard, Ohio's Beleaguered Entirety Statute

An estate by the entireties is not a novel estate, as at common law it was the preferred method for a husband and wife to hold title to real property. Yzenbaard, Ohio's Beleaguered Entirety Statute (1980), 49 U. Cin. L. Rev. 99, 100. It is a form of concurrent ownership of property that is peculiar to married couples. Magee, Tenancy by the Entirety: Ohio's New Estate (1974), 2 N. Ky. St. L. Forum 69, 70-71. A married couple which holds title to property by the entireties is seized of the property "per tout et non per my" (seized of a whole but not of a share). 4 Thompson on Real Property (1979) 59, Separate and Concurrent Ownership, Section 1784. "Under modern entireties theory the husband and wife are viewed as but one person and take the whole estate as one person through their legal unity of marriage." Magee, *supra,* at 71. Thus, neither spouse has a divisible part or interest in the property, but rather each has the whole estate. To create an estate by the entireties at common law, it was necessary to have present the four unities of time, title, interest and possession together with the fifth unity of person between husband and wife. Magee, *supra,* at 71. Thus, for an estate by the entireties to exist at common law the tenants must be husband and wife and have an equal interest which was acquired by the same conveyance, commenced at the same time and held by the same undivided possession. See *Knibb* v. *Security Ins. Co.* (1979), 121 R.I. 406, 410, 399 A. 2d 1214, 1216.

Since at common law the distinguishing feature of an estate by the entireties was spousal unity, such an estate could only exist during coverture. Upon the death of one of the spouses, the entireties estate necessarily was dissolved and the whole estate, as held in its entirety by the husband and wife, continued in the surviving spouse. However, the whole estate continued in the surviving spouse, not because the surviving spouse was vested with any new interest in the property upon the death of the other, but rather because each spouse originally took an undivided interest in the whole. Magee, *supra,* at 73.

Estates by the entireties were not recognized in Ohio prior to 1972 (the effective date of R.C. 5302.17), as the Supreme Court, in *Sergeant* v. *Steinberger* (1826), 2 Ohio 305, held that any form of survivorship, including an estate by the entireties between husband and wife, was against public policy as it was "* * * not founded in principles of natural justice * * *" and that it offended the "understandings, habits, and feelings of the people." *Sergeant, supra,* at 306. This judicial philosophy, not favoring the right of survivorship in any form, prevailed until the Supreme Court in *In re Estate of Hutchison* (1929), 120 Ohio St. 542, held that although joint tenancy with its right of survivorship did not exist in Ohio as it did at common law, parties could nevertheless contract for joint ownership with a survivorship right. Thus, upon the death of one of the joint tenants, the entire interest in the property succeeded to the surviving tenant. This succession in interest, however, did not pass to the survivor based on the common-law principle of survivorship incident to a joint tenancy, but rather by the operation of the contractual provision between the parties. *Hutchison, supra,* at 550-552. The court emphatically stated that the survivorship language must be utilized if the survivorship right was to exist, as simply the expression "joint ten-

(1980), 49 U. Cin. L. Rev. 99; Shedlarz, Tenancy by the Entirety in Ohio: Questions With No Answers (1980), 53 Ohio Bar 1105; Comment, The Ohio Entirety Estate: Alternative Approaches to Anticipated Problems (1979), 4 U. Dayton L. Rev. 425; Magee, Tenancy by the Entirety: Ohio's New Estate (1974), 2 N. Ky. St. L. Forum 69; Baker, The New Ohio Estate By The Entireties—A Medieval Pandora's Box Opened (1972), 45 Ohio Bar 1663.

ancy" would not give rise to survivorship as at common law, but rather, such language would be treated as a tenancy in common. *Hutchison, supra,* at 550. Finally, the court stated that when two persons had utilized the survivorship language, each tenant held an undivided one-half interest during their joint lives, with a vested remainder in the one-half interest of the other. *Hutchison, supra,* paragraph three of the syllabus.

In order to more fully understand the subtleties and distinctions between the various forms by which the real property may be held by cotenancy in Ohio, a brief summary of the various estates in land would prove to be most beneficial. At common law, there existed three estates with which we need be concerned: tenancy in common, joint tenancy, and tenancy by the entirety. A tenancy in common is a joint interest in property, the only essential element of which is a unity or right of possession. Each tenant in common has a separate and distinct title, and each tenant in common holds this title independently of the other cotenants. Each cotenant's interest can be transferred, devised or encumbered separately and without the consent of the other cotenants. 4 Thompson, *supra,* at 136-137, Section 1793.

A joint tenancy is held jointly by two or more persons with each joint tenant being entitled to enjoyment of the land. To create a joint tenancy, as contrasted to a tenancy in common, it was necessary for the estate to have been created under the four unities of time, title, possession and interest. Furthermore, a joint tenancy could not exist at common law without the right of survivorship. However, then as now, joint tenants are seized "per my et per tout" (of a share and of the whole) and therefore, a joint tenant may sever the tenancy by an individual act, such as a transfer or transaction which involves the joint tenant's interest. Such an act, however, destroys the joint tenancy and, accordingly, the right of survivorship is also lost. 4 Thompson, *supra,* at 15-31, Section 1776.

Although we have discussed tenancy by the entirety at some length, we emphasize that at common law, it required the same four unities as did a joint tenancy, along with the fifth unity of person between husband and wife. Each spouse owns the whole, so that upon the death of one spouse, the deceased spouse's interest is extinguished and the surviving spouse owns the whole estate by the terms of the entirety estate rather than through a survivorship right, as in joint tenancy.[3] Finally, neither spouse has a separate, divisible interest in the estate and, therefore, a sole spouse cannot convey, transfer, or sell his/her interest. 4 Thompson, *supra,* at 58-72, Section 1784.

As we noted *supra,* the estate by the entireties was predicated upon the concept of unity between the husband and wife during marriage. This idea meant that the wife's estate merged into the husband's estate, and although at common law the husband and wife were considered to be one, that one, by definition, was the husband. Thus, during coverture, the one person who exercised complete dominion and control over the estate, even to the

---

[3] In *Lang* v. *Commissioner* (1933), 289 U.S. 109, the issue before the United States Supreme Court concerned the determination of basis for federal income tax purposes of real property held by a tenancy by the entireties, where one of the spouses was deceased and the surviving spouse subsequently sold the property. The Supreme Court stated at 111: "An estate by the entirety is held by the husband and wife in single ownership, by a single title. They do not take by moieties, but both and each take the whole estate, that is to say, the entirety. The tenancy results from the common law principle of marital unity; and is said to be *sui generis.* Upon the death of one of the tenants 'the survivor does not take as a new acquisition, but under the original limitation, his estate being simply freed from participation by the other; . . .' 1 Washburn, Real Property 6th ed., §912."

extent of alienating it, subject to the wife's right of survivorship, was the husband. *In re Thomas, supra,* at 425; *Donvito, supra,* at 55; *Magee, supra,* at 71.

This exclusive right of control in the husband was changed substantially with the passage of Married Women's Property Acts. See, *e.g.,* R.C. Chapter 3103. Some courts have held that by recognizing a wife's legal rights in property, the unity of person theory was destroyed and, therefore, an estate by the entirety could no longer exist.[4] Phipps, Tenancy by Entireties (1951), 25 Temp. L. Q. 24, 27-32; Yzenbaard, *supra,* at 100-102. However, a majority of states have interpreted the Married Women's Property Acts as equalizing the rights of the spouses in an entireties estate rather than conferring new rights upon the wife. *Donvito, supra,* at 55; Phipps, *supra,* at 29; Yzenbaard, *supra,* at 101. We determine, as did the appellate court in *Donvito, supra,* that Ohio follows this latter interpretation. *Donvito, supra,* at 55; see *Smiley* v. *Smiley's Admr.* (1869), 18 Ohio St. 543.[5] Thus, we conclude that the right of married women to own property does not preclude the existence of an estate by the entireties.

We note that the language of the statute (R.C. 5302.17) and the sample statutory deed, itself, are ambiguous with respect to creating an estate by the entireties. Although R.C. 5302.17 was enacted to authorize creation of an "estate by the entireties," the statutory language states: "* * * creates an estate by the entireties in the grantees, and upon the death of either, conveys such interest to the survivor * * *." Also, the sample statutory deed is captioned "ESTATE BY THE ENTIRETIES WITH SURVIVORSHIP DEED," and states that the grantor grants "to _____ and _____, husband and wife, for their joint lives, remainder to the survivor of them, * * *."

Clearly, the above language is not totally consistent with the entireties estate as recognized at common law. Technically, as we noted *supra,* there is nothing to vest in a surviving spouse upon the death of the other spouse, as each spouse, by the terms of the estate, is granted the entire estate from its inception. See *Donvito, supra,* at 56. We, however, as did the *Donvito* court, construe the common-law words in this statute according to their common-law meaning. *Donvito, supra,* at 56; 50 Ohio Jurisprudence 2d (1961) 156-157, Statutes, Section 181. We also agree with the *Donvito* court that "[t]he conscious use of the term 'estate by the entireties' evidences an intent to statutorily create a unique common law estate previously abolished in Ohio" (*Donvito, supra,* at 56), and therefore hold that the legislature did authorize creation of such an estate by enacting R.C. 5302.17.

Having determined that the estate which is created by R.C. 5302.17 is an estate by the entireties as recognized at common law, we must now determine the effect of such an estate upon the rights of creditors. We recognize that it is settled law in this state that when comparable legislation has been construed in other jurisdictions prior to the enactment of a similar Ohio statute, the interpretation given the law in the other jurisdictions is to be given great weight in construing the

---

[4] See, *e.g., In re Richardson's Estate* (1938), 229 Wis. 426, 282 N.W. 585; *Lawler* v. *Byrne* (1911), 252 Ill. 194, 96 N.E. 892; *Clark* v. *Clark* (1875), 56 N.H. 105; *Walthall* v. *Goree* (1860), 36 Ala. 728. The view that Married Women's Acts have totally abrogated estates by the entireties is expressly held by nine states: Alabama, Colorado, Illinois, Iowa, Maine, Minnesota, New Hampshire, South Carolina, and Wisconsin. Phipps, *infra,* at 29.

[5] The Supreme Court of Ohio stated in *Smiley,* at 544, that the statute "* * * was not intended * * * to create for her [the married woman] new rights, but simply to take away the husband's control over such as she had."

Ohio statute. *Schneider* v. *Laffoon* (1965), 4 Ohio St.2d 89, 96 [33 O.O.2d 468]; *In-Flight Devices Corp.* v. *Van Dusen Air, Inc.* (C.A. 6, 1972), 466 F. 2d 220, 225 [65 O.O.2d 279]. We further note that the legislature is "presumed to be aware of, and to legislate in light of, the construction given to an area of the law by other state courts." *In re Thomas, supra,* at 427; see *In-Flight Devices, supra,* at 225. In the absence of evidence to the contrary, the legislature is also presumed to have adopted the settled construction of similar statutes in other jurisdictions. *In re Thomas, supra,* at 427; *Reese* v. *Progressive Tool & Engineering Co.* (C.P. 1937), 25 Ohio Law Abs. 273, 277.

Twenty-six jurisdictions, including Ohio, recognize estates by the entireties. *Donvito, supra,* at 56; *In re Thomas, supra,* at 425-426.[6] Among these jurisdictions, however, four different theories have arisen concerning the ability of a creditor to levy upon property held by the entireties where the debt in question is that solely of an individual spouse. The four theories are the "common-law rule," the "all interests reachable rule," the "no interest reachable rule," and the "right of survivorship rule." *In re Thomas, supra,* at 426; *Sawada* v. *Endo* (1977), 57 Hawaii 608, 611-612, 561 P. 2d 1291, 1294-1295; *Phipps, supra,* 29-35; *Yzenbaard, supra,* 102-103. Perhaps the best summary of these views is presented by the Supreme Court of Hawaii in *Sawada, supra,* at 611-612, 561 P. 2d at 1294-1295:[7]

"In the Group I states (Massachusetts, Michigan, and North Carolina) the estate is essentially the common law tenancy by the entireties, unaffected by the Married Women's Property Acts. As at common law, the possession and profits of the estate are subject to the husband's exclusive dominion and control. *Pineo* v. *White,* 320 Mass. 487, 70 N.E.2d 294 (1946); *Speier* v. *Opfer,* 73 Mich. 35, 40 N.W. 909 (1888); *Johnson* v. *Leavitt,* 188 N.C. 682, 125 S.E. 490 (1924). In all three states, as at common law, the *husband* may convey the entire estate subject only to the possibility that the wife may become entitled to the whole estate upon surviving him. *Phelps* v. *Simons,* 159 Mass. 415, 34 N.E. 657 (1893); *Arrand* v. *Graham,* 297 Mich. 559, 298 N.W. 281 (1911); *Hood* v. *Mercer,* 150 N.C. 699, 64 S.E. 897 (1909). As at common law, the obverse as to the wife does not hold true. Only in Massachusetts, however, is the estate in its entirety subject to levy by the husband's creditors. *Splaine* v. *Morrissey,* 282 Mass. 217, 184 N.E. 670 (1933). In both Michigan and North Carolina, the use and income from the estate is not subject to levy during the marriage for the separate debts of either spouse. *Dickey* v. *Converse,* 117 Mich. 449, 76 N.W. 80 (1898); *Hood* v. *Mercer, supra.*

"In the Group II states (Alaska, Arkansas, New Jersey, New York, and Oregon) the interest of the debtor spouse in the estate may be sold or levied upon for his or her separate debts, subject to the other spouse's contingent right of survivorship. *Pope* v. *McBride,* 207 Ark. 940, 184 S.W.2d 259 (1945); *King* v. *Greene,* 30

---

[6] The number of jurisdictions cited as recognizing the estate by the entireties differs from source to source. Yzenbaard in her article at 100-101 claims twenty-six states recognize the entireties estate. The Supreme Court of Hawaii in *Sawada* v. *Endo* (1977), 57 Hawaii 608, 561 P. 2d 1291, stated that twenty-one jurisdictions held this view. Phipps, in his article written in 1951, *supra,* at 46-57, lists twenty jurisdictions which espouse this view. Finally, the Maryland Bankruptcy Court in *In re Ford* (1980), 3 Bankr. 559, 578, fn. 8, stated that twenty-four jurisdictions recognize the estate by the entireties. See, also, *In re Thomas, supra,* at 427.

[7] These views are also summarized in *In re Thomas, supra,* at 426-427 and Yzenbaard, *supra,* at 102-103. Originally, this summary was prepared by Phipps, *supra,* at 29-35.

N.J. 395, 153 A.2d 49 (1959); *Hiles* v. *Fisher*, 144 N.Y. 306, 39 N.E. 337 (1895); *Brownley* v. *Lincoln County*, 218 Ore. 7, 343 P.2d 529 (1959). Alaska, which has been added to this group, has provided by statute that the interest of a debtor spouse in any type of estate, except a homestead as defined and held in tenancy by the entirety, shall be subject to his or her separate debts. *Pilip* v. *United States*, 186 F. Supp. 397 (D.Alaska, 1960).

"In the Group III jurisdictions (Delaware, District of Columbia, Florida, Indiana, Maryland, Missouri, Pennsylvania, Rhode Island, Vermont, Virginia, and Wyoming) an attempted conveyance by either spouse is wholly void, and the estate may not be subjected to the separate debts of one spouse only. *Citizens Savings Bank Inc.* v. *Astrin*, 44 Del. 451, 61 A. 2d 419 (1948); *Golden* v. *Glens Falls Indemnity Co.*, 102 U.S.App. D.C. 106, 250 F.2d 769 (1957); *Hunt* v. *Covington*, 145 Fla. 706, 200 So. 76 (1941); *Sharp* v. *Baker*, 51 Ind. App. 547, 96 N.E. 627 (1911); *McCubbin* v. *Stanford*, 85 Md. 378, 37 A. 214 (1897); *Otto F. Stifel's Union Brewing Co.* v. *Saxy*, 273 Mo. 159, 201 S.W. 67 (1918); *O'Malley* v. *O'Malley*, 272 Pa. 528, 116 A. 500 (1922); *Bloomfield* v. *Brown*, 67 R.I. 452, 25 A.2d 354 (1942); *Citizens' Savings Bank & Trust Co.* v. *Jenkins*, 91 Vt. 13, 99 A. 250 (1916); *Vasilion* v. *Vasilion*, 192 Va. 735, 66 S.E. 2d 599 (1951); *Ward Terry and Company* v. *Hensen*, 75 Wyo. 444, 297 P.2d 213 (1956).

"In Group IV, the two states of Kentucky and Tennessee hold that the contingent right of survivorship appertaining to either spouse is separately alienable by him and attachable by his creditors during the marriage. *Hoffmann* v. *Newell*, 249 Ky. 270, 60 S.W.2d 607 (1933); *Covington* v. *Murray*, 220 Tenn. 265, 416 S.W.2d 761 (1967). The use and profits, however, may neither be alienated nor attached during coverture."

It is clear from the above summary that the "no interest reachable rule" (Group III) is the most prevalent among the jurisdictions which recognize an estate by the entireties. The distinguishing characteristic between the "no interest reachable rule" and the "right of survivorship rule" is that under the former, the creditor of an individual spouse "may not attach, levy upon or sell the property held at tenancy by the entireties," although under the latter, the creditor of an individual spouse may attach the right of survivorship of the debtor-spouse. *In re Thomas, supra,* at 426. We reiterate, however, that the question of whether the debtor spouse's right of survivorship may be attached by that spouse's creditor is not presently before the court.[8]

Based on the above discussion, we unequivocally follow the majority of jurisdictions and hold that a judgment creditor of a married individual is precluded from enforcing that judgment by an action in foreclosure against real property which the individual debtor holds with his/her spouse in an estate by the entireties, where the judgment evidencing the debt of the individual spouse and the resulting foreclosure action to enforce that judgment both occur subsequent to the date of the marriage and to the date on which the spouses were granted an estate by the entireties.

In so holding, we offer no opinion

---

[8] We note, however, that the Ninth Appellate District in *Donvito, supra,* at 57, expressly stated that:

"* * * as presently constituted in Ohio, an estate by the entireties prevents the creditor of only one spouse from attaching that spouse's interest in the estate or from levying on the tenancy property * * *."

We recognize that this language apparently states that a lien which reflects a judgment against an individual spouse has no effect when filed against real property which the debtor-spouse holds by the entireties with his/her non-debtor-spouse.

regarding issues where the occurrence of the marriage, granting of the entireties estate, incurrence of the debt and filing of the foreclosure action is of any other sequence other than that sequence which is presently before us. Furthermore, we offer no opinion as to whether a conveyance, authorized by R.C. 5302.17, from a husband and wife as tenants in common to themselves as tenants by the entireties, and designed to defeat the existing claim of a creditor against one of the spouses, is a fraudulent conveyance. Finally, again we emphasize that the question of whether a judgment lien or other lien has any effect when filed against property held by the entireties is not before us and therefore, we offer no opinion on that issue at this time.[9]

On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. This cause is remanded to said court for further proceedings consistent with this opinion. Costs of this appeal are assessed against appellant.

*Judgment affirmed.*

BARBER and WILEY, JJ., concur.

WILEY, J., retired of the Sixth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.

---

[9] We recognize that issues in legal areas other than creditors' rights most certainly will arise which involve the estate by the entireties; *e.g.,* actions in partition; treatment upon divorce; treatment at death regarding probate, testamentary devisees, simultaneous death, and estate taxation; whether real property other than the homestead may be held by an estate by the entireties; and whether fractional interests may be held by the entireties estate. See, Comment (1979), 4 U. Dayton L. Rev. 425, 434-444. We reserve discussion of these and other potential issues until they are properly before us.