[Cite as *Marks v. Aurora Bd. of Zoning Appeals*, 2016-Ohio-5183.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| JAMES E. MARKS, et al., | : | **O P I N I O N** |
| Appellant, | : | |
| - vs - | : | CASE NO. 2015-P-0049 |
| CITY OF AURORA, BOARD OF ZONING APPEALS, et al., | : | |
| | : | |
| Appellees. | : | |
| | : | |

Administrative Appeal from the Portage County Court of Common Pleas, Case No. 2013 CV 00840.

Judgment: Affirmed.

*Louis R. Bertrand,* 409 South Prospect Street, P.O. Box 550, Ravenna, OH 44266 (For Appellant).

*Douglas K. Paul,* Reitz, Paul, & Shorr, Attorneys at Law, 215 West Garfield Road, Suite 203, Aurora, OH 44202, and *Dean E. DePiero,* Aurora Law Director, 130 South Chillicothe Road, Aurora, OH 44202 (For Appellee, City of Aurora, Board of Zoning Appeals).

*Chad E. Murdock,* 228 West Main Street, P.O. Box 248, Ravenna, OH 44266 (For Appellee, Charles Marks).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, James E. Marks, appeals the judgment of the Portage County Court of Common Pleas, sustaining the decision of defendant-appellee, Aurora Board of Zoning Appeals, granting defendant-appellee, Charles F. Marks, an area

variance. The issue before this court is whether the decision to grant an area variance is supported by a preponderance of substantial, reliable, and probative evidence where an exception of 18.45 feet from the requirement that lots have 250 feet of frontage is sought; whether a common pleas court must hold an oral/evidentiary hearing in an administrative appeal where the grounds for holding such a hearing are not put before the court; and whether an application for variance must be approved by all owners of property held as cotenants in common. For the following reasons, we affirm the decision of the court below.

{¶2} On August 26, 2013, James E. Marks and Douglas Marks filed an Administrative Appeal of the City of Aurora, Board of Zoning Appeals Resolution 2013-07.

{¶3} On March 11, 2014, Charles was granted leave to intervene as an appellee.

{¶4} On June 2, 2014, James filed a Brief in Support of Administrative Appeal.

{¶5} On June 30, 2014, Charles filed a Brief.

{¶6} On July 14, 2014, the Aurora Board of Zoning Appeals filed its Brief.

{¶7} On June 5, 2015, the Portage County Court of Common Pleas issued a Judgment Entry, sustaining the decision of the Aurora Board of Zoning Appeals and overruling the administrative appeal.[1]

{¶8} On July 6, 2015, James filed a Notice of Appeal.

{¶9} On appeal, James raises the following assignments of error:

---

1. The signature line on this entry indicated that it was signed by the court magistrate, rather than the trial court judge. On September 29, 2015, the trial court issued a Judgment Entry *Nunc pro Tunc*, in which the signature line identified the signature as belonging to the trial court judge.

{¶10} "[1.] The trial court erred by sustaining the decision of the Aurora Board of Zoning Appeals and denying the administrative appeal of appellant James Marks."

{¶11} "[2.] The trial court erred when it overruled the administrative appeal of appellant without first conducting an oral and evidentiary hearing as requested by appellant in [his] administrative appeal originally filed on August 26, 2013."

{¶12} "[3.] The trial court erred when it overruled the administrative appeal of appellant because not all of the affected parties were notified of the board of zoning hearing."

{¶13} The decisions of municipal boards of zoning appeals are subject to review by courts of common pleas as provided by R.C. Chapter 2506. *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 22; R.C. 2506.01.

{¶14} The common pleas court "may affirm, reverse, vacate, or modify" the zoning board's decision, consistent with its findings as to whether the decision "is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. Review of the zoning board's decision by the common pleas court "often * * * resembles a *de novo* proceeding," in that "liberal provision [is made] for the introduction of new or additional evidence," and the court is required to make "both factual and legal determinations." *Cincinnati Bell, Inc. v. Glendale*, 42 Ohio St.2d 368, 369, 328 N.E.2d 808 (1975). The court may not, however, "blatantly substitute its judgment for that of the [zoning board]," as the board's decision must be affirmed if supported by a "preponderance" of substantial, reliable, and probative evidence.

3

*Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207, 389 N.E.2d 1113 (1979).

{¶15} Appeal from the judgment of the common pleas court is permitted "on questions of law." R.C. 2506.04. "An appeal to the court of appeals * * * is more limited in scope and requires that court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). "The courts of appeals may review the judgments of the common pleas courts only on questions of law; they do not have the same power to weigh the evidence." *Cleveland Clinic Found.*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, at ¶ 25.

{¶16} To be entitled to a variance, "[t]he applicant must demonstrate that practical difficulties in the use of the property will exist if the property is subject to the zoning regulation." Aurora Codified Ordinances 1139.03(e)(1).

> The Board [of Zoning Appeals] shall consider and weigh the following factors in determining whether the owner of the property seeking an area variance will encounter practical difficulties in the use of the property * * *:
>
> A. Whether the property will yield a reasonable economic return or have any beneficial use if the variance is denied;
>
> B. Whether the variance is substantial;

4

C. Whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment if the variance is granted;

D. Whether the delivery of governmental services (for example, water, sewer, garbage) would be adversely affected if the variance is granted;

E. Whether the property owner purchased the property with knowledge of the zoning regulation;

F. Whether the property owner's predicament feasibly can be solved through some method other than the variance; or

G. Whether the spirit and intent behind the zoning regulation would be observed and substantial justice done if the variance is granted.

*Id.*

{¶17} Consideration of Charles' Application for variance was taken up at the zoning board's July 10, 2013 meeting.

{¶18} The evidence before the lower court was that the Marks brothers, Douglas, James, and Charles, owned as tenants-in-common a twenty-five acre parcel of land located at 908 Old Mill Road, Aurora, which was the subject of a pending partition action (Portage County C.P. No. 2011 CV 0504). The property was acquired by inheritance from their parents. James currently resides on the property. Charles resided on the property until 2005, when a physical disability (quadriplegia) forced him to leave. Charles would like to build a handicap-accessible house on the property for

himself. Douglas resides in Wisconsin. The location is zoned R-2 Residential which requires lots to have 250 feet of frontage. Under a proposed partitioning of the property, Charles would receive a lot with 231.55 feet of frontage.

{¶19} Terese Fennell, chairperson of the zoning board, stated that, for the purpose of considering Charles' Application, the board would assume that the lot has been partitioned as proposed – "the issue whether the lot split will occur or will not occur is not an issue pending before this Board." Moreover, if granted, "the variance * * * will be conditional and only effective if the lot split occurs [as indicated]."

{¶20} James addressed the zoning board and opposed the variance since it would cause him to "lose part of my driveway" and "affect my whole ability to get to my barn."

{¶21} Counsel for James represented before the zoning board that his client favors "sell[ing] the property as a whole," and "if Charles Marks wants to buy it, he can buy it."

{¶22} Michael Colebrook, trustee for property surrounding the Marks' property, opposed the variance because "put[ting] a house right in the middle of our property which is kind of peaceful * * * would definitely disrupt our lifestyle back there."

{¶23} George Mazzaro, a neighbor, opposed the variance because "all the owners together" should "decide what they are going to do and how they are going to do it."

{¶24} James and Charles offered conflicting testimony as to whether the construction of a house, if the variance is granted, would disrupt James' use of his property.

6

{¶25} In Resolution 2013-07, the Aurora Board of Zoning Appeals granted Charles "an 18.45 foot variance from Section 1155.02 of the Aurora Codified Ordinances * * * requir[ing] 250 foot lot frontage, to allow 231.55 foot lot frontage, conditionally granted and effective only if the lot split as specifically identified on the application occurs." The zoning board noted the following in support of its decision: "the variance is not substantial"; "the owner inherited the land without knowledge of the lot frontage zoning restrictions"; "the property owners' predicament can not be solved by any other method"; "the spirit and intent of the zoning regulation would be observed if the variance is granted"; and "government services would not be affected by granting the variance."

{¶26} In affirming the zoning board's decision, the common pleas court concluded that it "was not unlawful, illegal, unconstitutional, arbitrary, capricious, [or] unsupported by the record by a preponderance of substantial, reliable and probative evidence." The court noted "it is clear that the [zoning board] considered all relevant factors in making its decision" and "did not find that a 19 foot variance is substantial."

{¶27} In his first assignment of error, James argues the court of common pleas erred because the zoning board did not consider and/or misapplied relevant factors, in particular whether the property would yield a reasonable economic return or have any beneficial use if the variance were denied.

{¶28} James contends that "nothing [could be] more substantial than partitioning a single large parcel of land into two separate parcels." Appellant's brief at 6. This argument has no relevance inasmuch as the issue of whether the property should be divided was not before the zoning board. As Chairperson Fennell made clear, for

7

purposes of considering the requested variance, the board would presume that the partition has occurred. James' argument pertains to the merits of partitioning the property, not the merits of the area variance. With respect to the issue before the board, a variance of 18.45 feet when compared to the 250 foot frontage requirement is relatively minor and not substantial.

{¶29} James also contends that the zoning board failed to consider the effect of the variance on the character of the neighborhood as attested by Colebrook and Mazzaro. Contrary to James' position, there was no compelling evidence that the variance would affect the character of the neighborhood. The property is zoned residential and Charles seeks to reside on the property, as his brother James already resides.

{¶30} Finally, James contends that Charles' predicament could feasibly be solved by selling the property as a whole. Again, this argument looks to the merits of partitioning the property rather than allowing the variance. Assuming, as the zoning board did, that the property has been partitioned, Charles would be in possession of property zoned residential but on which he could not reside without the variance. Apart from using the property for some non-residential purpose, no feasible alternative to granting the variance was proposed before the board.

{¶31} We recognize that the import of James' arguments is that the granting of the conditional variance as to frontage will influence the trial court's decision in the partition action. What the common pleas court may or may not do in the partition action, however, is not strictly relevant to whether the denial of an 18.45 foot variance in the frontage requirements would cause Charles practical difficulties in the use of his

8

property.  *Compare Kubbs v. Bd. of Zoning Appeals of Pataskala*, 5th Dist. Licking No. 2008-CA-100, 2009-Ohio-2016, ¶ 17 ("the Board of Zoning Appeals did not act outside of its jurisdiction in approving the variances, even though the Smiths must still obtain approval of the lot split from the Planning and Zoning Commission prior to proceeding").

**{¶32}** The first assignment of error is without merit.

**{¶33}** In the second assignment of error, James contends the court of common pleas erred by denying his request for an oral and evidentiary hearing.

**{¶34}** In an appeal of the decision of a zoning board, the court of common pleas "shall be confined to the transcript filed * * * unless it appears, on the face of that transcript or by affidavit filed by the appellant, that * * * [t]he testimony adduced was not given under oath."  R.C. 2506.03(A)(3).  In such case, "the court shall hear the appeal upon the transcript and additional evidence as may be introduced by any party."  R.C. 2506.03(B).

**{¶35}** The Administrative Appeal filed by James states: "ORAL AND EVIDENTIARY HEARING REQUESTED."  The Appeal does not state the basis under R.C. 2506.03(A) for the request.  On appeal before this court, James contends that it appears on the face of the transcript that the testimony adduced was not given under oath.  James notes that none of the witnesses at the July 10, 2013 meeting were sworn in and cites to the following transcript passage in which counsel for James addressed the zoning board: "I believe that we do have an opportunity to present witnesses.  Can we do that?  I'd like to have Jim testify in the case is that fine?"  Vice Chairperson Bernard McCarrell responded: "He doesn't need to testify.  He can speak."

9

{¶36} We find no error. Although James requested an oral and evidentiary hearing, he never explained the basis of his request to the common pleas court. It is not the court's duty to determine the basis of the request.

{¶37} Moreover, there was no objection raised to having the witnesses "speak," rather than "testify" under oath at the zoning board meeting. "The omission of administration of the oath to a witness in a trial or administrative hearing is waivable error." *Stores Realty Co. v. Cleveland Bd. of Bldg. Standards & Bldg. Appeals*, 41 Ohio St.2d 41, 322 N.E.2d 629 (1975), syllabus; *Premier Dev., Ltd. v. Poland Twp. Bd. of Zoning Appeals*, 7th Dist. Mahoning No. 14 MA 91, 2015-Ohio-2025, ¶ 31 ("[i]n the event that there is no objection to the admission of unsworn testimony at an administrative hearing, the error of allowing this evidence is waived and no additional evidence should be taken by the trial court in an appeal pursuant to R.C. Chapter 2506") (citation omitted); *Kandell v. Kent*, 11th Dist. Portage No. 90-P-2255, 1991 Ohio App. LEXIS 3640, 12-13 (Aug. 2, 1991).

{¶38} The second assignment of error is without merit.

{¶39} In the third assignment of error, James argues that the zoning board's decision was in error because it was "based on an improperly completed Application" and decided "without providing the legally required statutory notice to the owners of the affected property." Appellant's brief at 13.

{¶40} The Aurora Codified Ordinances provide that the "application for a variance shall only be submitted by an owner of the property" and "shall include * * * [t]he name, address and telephone number of the applicant owner * * *." Aurora Codified Ordinances 1139.03(a) and (b). When the application for variance "has been

10

filed in proper form," the matter should be set for hearing and notices sent. Aurora Codified Ordinances 1139.03(c).

**{¶41}** James maintains that Charles' Application was never filed in the "proper form" because he "did not provide the name of all owners on the Application." Appellant's brief at 11. We disagree.

**{¶42}** Contrary to James' position, the Aurora Ordinance does not require the consent of "all owners" of property in order to submit a variance application, but only "an owner" of the property. Further, James cites no authority for the proposition that the consent of all owners of property by tenancy-in-common is necessary in order to seek an area variance with respect to the property. On the contrary, "[e]ach tenant in common has a separate and distinct title, and each tenant in common holds this title independently of the other cotenants," so that "[e]ach cotenant's interest can be transferred, devised or encumbered separately and without the consent of the other cotenants." (Citation omitted.) *Koster v. Boudreaux*, 11 Ohio App.3d 1, 5, 463 N.E.2d 39 (6th Dist.1982). If a cotenant's interest may be transferred, devised, or encumbered without the consent of the other cotenants, certainly a variance may be sought without their approval.

**{¶43}** James also argues that the zoning board failed to give Douglas notice of the July 10, 2013 meeting as required by Aurora Codified Ordinance 1139.06 (Uniform Notice of Hearing). However, this argument was not raised in James' Brief in Support of Administrative Appeal before the common pleas court and, accordingly, is waived. *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 123, 512 N.E.2d 640 (1987) ("[a]n appellate court will not consider any error which a party complaining of a

11

trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court"); *Gross Builders v. Tallmadge*, 9th Dist. Summit No. 22484, 2005-Ohio-4268, ¶ 36 ("[a] failure to raise an issue during an administrative appeal before the common pleas court operates as a waiver of the party's right to assert the issue for the first time to an appellate court").

{¶44} James did state in the court below that Douglas was deprived of due process. However, James presents no argument as to what property interest Douglas was deprived of by the granting of the variance. Moreover, Douglas had received notice of the variance application and was represented by counsel at the initial meeting of the zoning board on May 8, 2013. Likewise, counsel was advised at that meeting that the matter would be tabled until a later board meeting. Douglas' counsel also received notice of the July 10, 2013 meeting, albeit not until July 8, 2013. Finally, if the purportedly deficient notice received by Douglas "deprived Appellant James Marks of having testimony necessary to make his case to the Board that [the] variance should be denied," that argument should have been made to the trial court pursuant to R.C. 2506.03(A).[2]

{¶45} The third assignment of error is without merit.

{¶46} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, sustaining the Aurora Board of Zoning Appeals' decision to grant

---

2. James emphasizes that Chairperson Fennell "appeared to take pleasure in depriving Douglas Marks of his due process," citing her comments: "We are not taking into consideration anything from Doug because Doug isn't here to tell us his own part so what they say Doug says and what you say Doug says is irrelevant to us." Appellant's Brief at 12-13. Fennell's comments were not malicious but interposed to silence Charles from representing that the absent Douglas actually favored the partition of the property.

12

Charles Marks' Application for variance, is affirmed. Costs to be taxed against appellant.


TIMOTHY P. CANNON, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.


_____


COLLEEN MARY O'TOOLE, J., dissents with Dissenting Opinion.

{¶47} Finding merit in James' third assignment of error, I would reverse and remand, with an order to the trial court to vacate the decision of the zoning board. His brother Douglas, the third co-owner of the property in question, did not receive proper notice of the hearing regarding the zoning variance requested by Charles. This deprived not merely Douglas, but James too, of their due process rights.

{¶48} In *State v. Mateo*, 57 Ohio St.3d 50, 52 (1991), the Supreme Court of Ohio stated:

{¶49} "The United States Supreme Court has stated that the essence of due process is notice and an opportunity to be heard: 'For more than a century the central meaning of procedural due process has been clear: "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." (* * *) (Citations omitted.) It is equally fundamental that the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo* (1965), 380 U.S. 545, 552.' *Fuentes v.*

13

*Shevin* (1972), 407 U.S. 67, 80.  See, also, *Mathews v. Eldridge* (1976), 424 U.S. 319, 333.  'As a general rule, due process requires that the government give notice and an opportunity to be heard *before* taking an individual's liberty or property.'  (Emphasis *sic.*) *United States v. 141st Street Corp.* (C.A.2, 1990), 911 F.2d 870, 874.   Likewise, '(p)rocedural due process requires that all parties be given reasonable notice of the pendency of an action and an opportunity for a hearing where their objections can be presented.'  *Faries v. Director, Office of Workers' Comp. Prog.* (C.A.6, 1990), 909 F.2d 170, 173.  'Due process of law involves only the essential rights of notice, hearing or opportunity to be heard before a competent tribunal.   (* * *)' *State v. Luff* (1927), 117 Ohio St. 102, * * *, at paragraph four of the syllabus.  See, also, *State v. Edwards* (1952), 157 Ohio St. 175, 178, * * *, at paragraph one of the syllabus."   (Parallel citations omitted.)

**{¶50}** In this case, the zoning board only emailed notice of the July 10, 2013 meeting at which Charles' variance request was to be heard *two* days before the meeting to Douglas' attorney.   This does not comply with the zoning board's own regulations.  Aurora Codified Ordinance 1139.03(c) provides, in pertinent part:

**{¶51}** "When a notice of * * * variance has been filed in proper form with the Clerk of the Board of Zoning Appeals, the Clerk shall immediately place the request for * * * variance upon the calendar for hearing, and shall cause notices, to be issued as provided in Section 1139.06, Uniform Notice of Hearing."

**{¶52}** Aurora Codified Ordinance 1139.06 requires that notices for variance hearings be published in the newspaper and sent by mail *ten* days prior to hearing. Aurora Codified Ordinance 1139.06(b)(1)-(2).  It mandates notice by sign at the subject

14

property *seven* days prior to hearing. Aurora Codified Ordinance 1139.06(b)(3). It makes *no* mention of email notification.

{¶53} The zoning board knew, from the time of its prior May meeting, that Douglas lived in Wisconsin. The two days notice provided to Douglas' attorney in this case did not merely contravene the zoning board's own rules: it was clearly insufficient for Douglas and his attorney to prepare. It was not meaningful notice. I further note the zoning board did provide proper written notice of the July 10, 2013 meeting to Charles and his attorney, but not to Douglas, James, or their attorneys.

{¶54} In *Shikner v. S & P Solutions*, 11th Dist. Lake No. 2004-L-108, 2006-Ohio-127, the trial court granted S & P's oral motion for default judgment at hearing, without Shikner's counsel having been provided the seven day written notice mandated by Civ.R. 55(A). *Id.* at ¶19, 22-23. This court reversed and remanded, holding that Shikner's "ability to show cause under Civ.R. 55(A) [for failing to file a responsive pleading] was emasculated." *Id.* at ¶23.

{¶55} In this case, Douglas lost his right to oppose the variance sought by Charles due to a complete lack of meaningful notice. Both he and James opposed the variance. James might well have benefitted from the presence of Douglas at the meeting. This was a deprivation of the due process rights of both men. *Mateo*, *supra*, at 52.

{¶56} I respectfully dissent.