CENTRAL NATIONAL BANK OF CLEVELAND, EXR., APPELLEE, *v.*
FITZWILLIAM ET AL., APPELLANTS.

[Cite as Central Natl. Bank of Cleveland *v.* Fitzwilliam (1984),
12 Ohio St. 3d 51.]

(No. 83-1325—Decided July 3, 1984.)

*Messrs. Jacobs, Cohn, Rubin & Ziskind* and *Mr. Armand Cohn,* for appellee.

*D. Kevin O'Reilly Co., L.P.A.,* and *Mr. D. Kevin O'Reilly,* for appellants.

CELEBREZZE, C.J. We are asked today to determine whether the General Assembly, in enacting R.C. 5302.17, intended to allow spouses to hold property in such a manner that one spouse cannot alienate the property absent the consent of the other spouse.

R.C. 5302.17 provides:

"A deed conveying any interest in real property to a husband and wife, and in substance following the form set forth in this section, when duly executed in accordance with Chapter 5301. of the Revised Code, creates an estate by the entireties in the grantees, and upon the death of either, conveys such interest to the survivor, his or her separate heirs and assigns.

" 'ESTATE BY THE ENTIRETIES WITH SURVIVORSHIP DEED . . . . . (marital status), of . . . . . . . . county, . . . for valuable consideration paid, grant(s), (covenants, if any), to . . . . . . and . . . . . . . ., husband and wife, for their joint lives, remainder to the survivor of them, whose tax-mailing address is . . . . . . . ., the following real property:

"(Description of land or interest therein and encumbrances, reservations, and exceptions, if any)

"Prior Instrument Reference: Volume . . . . . ., Page . . . ., wife (husband) of the grantor, releases all rights of dower therein.

"Witness . . . . . hand this . . . . day of . . . . . .' (Execution in accordance with Chapter 5301. of the Revised Code)

"A husband and wife who are the sole owners of real property as joint tenants or tenants in common, may create in themselves an estate by the entireties in such real property, by executing a deed as provided in this section conveying their entire, separate interests in such property to themselves.

"A spouse who is the sole owner of any real property may create in himself or herself and the other spouse an estate by the entireties in such real property, by executing a deed as provided in this section conveying his or her entire interest in such property to themselves. The provisions of this paragraph shall be applied retroactively to cover transactions occurring on or after February 9, 1972.

"When an estate by the entireties vests in a surviving spouse, the transfer of the interest of the decedent spouse may be recorded by presenting to the county auditor, and filing with the county recorder either a certificate of transfer as provided in section 2113.61 of the Revised Code, or an affidavit or certificate of death, reciting the names of the spouses, the residence of the surviving spouse, the date of death of the decedent spouse, and a description of the property. The county recorder shall make index reference to any certificate or affidavit so filed in the record of deeds."

The common-law estate by the entireties had its origins in English law where historically husband and wife were legally deemed to be one person. Spouses who held property in an estate by the entireties were said to own the

whole or entire estate by virtue of their legal status as one person. Thus, each spouse owned an undivided interest in the entire estate and not merely a share in the fee. See, generally, 4 Thompson on Real Property (1979) 69-71, Section 1784; 4A Powell on Real Property (1982) 695-706.5, Paragraph 623; 41 American Jurisprudence 2d (1968) 58-60, Section 55; Comments, The Ohio Entirety Estate: Alternative Approaches to Anticipated Problems (1979), 4 U. Day. L. Rev. 425, 428.

Upon the death of one spouse, the surviving spouse continues to hold the whole or entire estate. Under an estate by the entireties, each spouse has an interest in the entire estate under the original conveyance to both spouses. Thus, the surviving spouse simply succeeds to the entire estate upon the death of the other spouse. In this respect the spouses holding property by an estate by the entireties do have, in a sense, a right of survivorship. However, the surviving spouse acquires no new interest in the entire estate since, from the time of the conveyance to both spouses, each spouse had an undivided interest in the whole estate. *Lang* v. *Commissioner* (1933), 289 U.S. 109, 111; 41 American Jurisprudence 2d (1968) 59, Section 55; Thompson, *supra,* at 70, Section 1784; *Donvito* v. *Criswell* (1982), 1 Ohio App. 3d 53, 55; *Koster* v. *Boudreaux* (1982), 11 Ohio App. 3d 1, 4.

Perhaps the most significant feature of the common-law estate by the entireties is the inability of one spouse, without the consent or acquiescence of the other, to convey, bind, encumber, sever, or otherwise alienate the property. This is so because neither spouse possessed an individual interest in the entire estate. In addition, each spouse has an equal right to succeed to the property upon the death of the other spouse. As a result, the court of appeals in *Donvito, supra,* at 55, correctly observed that:

"* * * At common law, tenants by the entireties possessed no individual interests in the entire property and, therefore, neither spouse could alienate or sever the tenancy by his or her singular act."

The parties concede that prior to the passage of R.C. 5302.17, this state did not recognize a common-law estate by the entireties. See *Sergeant* v. *Steinberger* (1826), 2 Ohio 305. It is appellants' position that the General Assembly intended to depart from the common law and allow property to be held in an estate by the entireties.

The majority of the court of appeals rejected appellants' argument below and held that while R.C. 5302.17 did indeed create an estate unknown at common law, the estate so created was a joint tenancy with a right of survivorship, not a conventional estate by the entireties. The court of appeals concluded therefore that each spouse owned a one-half interest which could be reached by the creditors of one spouse. For the following reasons, we reverse the judgment of the court of appeals.

In determining the intent of the General Assembly in enacting R.C. 5302.17, we must give due weight to the legislature's use of the phrase "estate by the entireties." In the context of property law, an estate by the entireties has a particular and unique definition which sets it apart from

other recognized forms of joint tenancies. As such, we are inclined to believe that when the General Assembly used "estate by the entireties" in R.C. 5302.17, an estate by the entirety is precisely what it intended to create.

The court of appeals found that R.C. 5302.17 was ambiguous since the statute employs terms such as "conveyance" and "heirs" and these terms are imprecise to describe the manner in which a survivor to an estate by the entireties acquires title. While the foregoing terms may be technically incorrect, contrary to the decision below, their use does not evidence an intent on the part of the General Assembly to create an estate other than an estate by the entireties. See *Donvito* v. *Criswell, supra,* at 56, and *Koster* v. *Boudreaux, supra.* The General Assembly's intent, as evidenced by its choice of the phrase "estate by the entireties" is not overridden by the use of some language which is not normally associated with a historical estate by the entireties.

We conclude therefore that the General Assembly intended, through R.C. 5302.17, to allow property to be held in an estate by the entireties. Inasmuch as no definition of this estate by the entireties is provided in the statute itself, the common-law definition will control. Consequently, the estate by the entireties created by R.C. 5302.17 is equivalent to a common-law estate by the entireties which is not alienable by one spouse without the consent of the other.

It follows that, in the case at bar, the creditors of Colbert Fitzwilliam may not reach the property presently held by Colbert and Ruth Fitzwilliam in an estate by the entireties in the absence of any evidence that Ruth Fitzwilliam consented to the alienation of the property. As a result, the trial court properly entered judgment in favor of appellants.

Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

W. Brown, Sweeney, Locher, Holmes, C. Brown and J. P. Celebrezze, JJ., concur.