CANDACE B. ROSEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rosen v. Commissioner
Docket No. 28230-91
United States Tax Court
T.C. Memo 1994-40; 1994 Tax Ct. Memo LEXIS 40; 67 T.C.M. (CCH) 2082; January 31, 1994, Filed *40 For petitioner: J. Timothy Bender and David G. Lambert. For respondent: John E. Budde. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: Respondent determined the following deficiency in, and additions to, petitioner's 1987 Federal income tax: Additions to Tax Section
Section
Section
Deficiency
6653(a)(1)(A) [1] 6653(a)(1)(B)
6661
$ 11,214.00
$ 560.70 *
$ 2,803.50
* 50 percent of the interest due on the portion of the
underpayment attributable to negligence. Respondent determined
that the entire underpayment was attributable to negligence. We must decide the following issues for tax year 1987: 1. Is petitioner required to recognize $ 43,873 of capital gain realized from the sale of a residence? We hold that she is. [2]
*41 2. Is petitioner entitled to claim head of household filing status? We hold that she is not. 3. Is petitioner liable for the additions to tax for negligence? We hold that she is to the extent stated herein. 4. Is petitioner liable for the addition to tax for substantial understatement of income tax? We hold that she is to the extent stated herein. FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner resided in Moreland Hills, Ohio. Petitioner and Harvey Rosen (Mr. Rosen) were married in 1969 and were divorced in 1988. They have four children. On or about August 15, 1973, petitioner and Mr. Rosen purchased as their principal residence a house at 2775 S.O.M. Center Road, Hunting Valley, Ohio (the residence). The deed to the residence (1973 deed), filed August 15, 1973, conveyed the property to petitioner and Mr. Rosen as "husband and wife, for their joint lives, remainder to the survivor of them". On January 5, 1976, a new deed (1976 deed) for the residence was recorded that contained certain uniform deed restrictions which were being imposed generally on properties located within Hunting Valley. The *42 1976 deed conveyed the residence to petitioner and Mr. Rosen as "Husband and Wife, for their joint lives, remainder to the survivor of them" and provided that it was intended to convey the residence to them in the same form of tenancy as previously held by them. The residence was petitioner's home from 1973 until September 1987. Between October 1986 and January 1987, petitioner and Mr. Rosen experienced marital difficulties and separated. Mr. Rosen moved out of the residence. Petitioner continued to live in the residence with her four minor children. During 1987, petitioner earned a net amount of $ 14,063 from a consulting position with United Way Services. No Federal income tax was withheld on these earnings. She used these earnings to support herself and her children, providing them with food, clothing, and spending money. Petitioner borrowed $ 9,600 from her stepfather in January 1987, which she used to support herself and her children. Mr. Rosen provided some support to petitioner's household during 1987, paying at least certain telephone, gas, electric, and water bills. He also gave petitioner checks in the amount of $ 3,650 between January and July of 1987. Mr. Rosen *43 paid for vacations which he took during 1987 and on which he was accompanied by his children. In addition, Mr. Rosen purchased a television and video cassette recorder for petitioner's household. In September 1987, petitioner and her children moved from the residence to a house that she rented for $ 600 per month. Petitioner paid utility bills for this house. In 1987, petitioner and Mr. Rosen defaulted on the mortgages encumbering the residence, and a judgment of foreclosure that ordered the residence sold was entered against petitioner and Mr. Rosen. The residence was sold for $ 245,000 on October 9, 1987. A Form 1099-B stating the amount of the sale price was issued to petitioner by the Third Federal Savings & Loan Association of Cleveland. [3] Neither petitioner nor Mr. Rosen replaced the residence during the replacement period provided by section 1034. The proceeds from the sale remaining after payment of expenses and debts (viz., $ 79,951.99) were placed in an escrow account (escrow account) in the names of petitioner and Mr. Rosen. That account earned $ 965.10 in interest for 1987. *44 On or about April 15, 1988, petitioner filed an individual Federal income tax return for 1987 in which she claimed head of household filing status and reported a tax due of $ 1,814, after taking into account the earned income credit. Petitioner did not report in that return any gain from the sale of the residence or any interest earned by the escrow account. Tax year 1987 was the first year since petitioner's marriage to Mr. Rosen in 1969 for which she filed a separate, individual Federal income tax return. Mr. Rosen also filed a separate, individual Federal income tax return for 1987, dated July 12, 1988, in which he reported one-half of the interest earned by the escrow account (viz., $ 483). [4] In addition, Mr. Rosen allocated 20 percent of the $ 245,000 proceeds from the sale of the residence (viz., $ 49,000) to the sale of a barn and fences used in a business of selling horses that he operated at the residence, resulting in his reporting in his 1987 return a capital gain of $ 548 from the sale of those properties. Mr. Rosen also reported in that return one-half of the remaining proceeds from the sale of the residence (viz., $ 98,000) or 40 percent of the total proceeds of *45 $ 245,000, resulting in a capital gain of $ 43,873 on that portion of the proceeds. On December 15, 1988, petitioner was granted a divorce from Mr. Rosen. The decree of divorce (decree), filed December 30, 1988, awarded petitioner the funds deposited in the escrow account, less $ 3,300. The decree provided that petitioner was responsible for payment of $ 2,000 to the Internal Revenue Service for her 1987 taxes and that Mr. Rosen was responsible for all marital debts not allocated to petitioner. Petitioner believed that she was responsible for paying only $ 2,000 of Federal income tax for 1987, as provided in the decree, and that Mr. Rosen was responsible for payment of all Federal income tax on the gain realized from the sale of the residence. In the notice of deficiency (notice) relating to 1987 that was mailed to petitioner on September 3, 1991, respondent determined *46 that petitioner had failed to report $ 43,873 of capital gain from the sale of the residence and $ 483 of interest income from the escrow account. Respondent further determined that petitioner was not entitled to claim the filing status of head of household and changed petitioner's filing status to married, filing separately. As a result of the foregoing adjustments, respondent also disallowed the earned income credit claimed by petitioner. Finally, respondent determined that petitioner was subject to the additions to tax for negligence and for substantial understatement of income tax. OPINION Respondent is relying on the six-year period of limitations provided by section 6501(e)(1)(A), rather than the three-year period provided by section 6501(a). Thus, respondent bears the burden of showing that petitioner omitted from gross income an amount in excess of 25 percent of the gross income reported in her 1987 income tax return. See Burbage v. Commissioner, 82 T.C. 546, 553 (1984), affd. 774 F.2d 644 (4th Cir. 1985); Reis v. Commissioner, 1 T.C. 9, 12-13 (1942), affd. 142 F.2d 900 (6th Cir. 1944); *47 cf. Estate v. Robinson v. Commissioner, 101 T.C.     (1993) (slip op. at 26). Petitioner, however, bears the burden of showing error in respondent's determinations with respect to her filing status and the additions to tax. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Peters v. Commissioner, 51 T.C. 226, 232 (1968). Omissions from Gross Income and Applicable Statute of Limitations
Respondent does not dispute that the three-year limitations period provided by section 6501(a) has run. Consequently, unless an exception to the three-year period of limitations is applicable, respondent will be barred from assessing and collecting the tax determined to be due in the notice. Section 6501(e)(1)(A) provides in pertinent part that, where a taxpayer files a return which omits from gross income an amount which is in excess of 25 percent of the amount of gross income reported in the return, the tax may be assessed at any time within six years after the return was filed. In the instant case, respondent determined that petitioner failed to report an amount of gross income which exceeded 25 percent of *48 the gross income reported in her 1987 return. Respondent claims that the amount omitted consisted of $ 483 of interest and $ 43,873 of capital gain [5] from the sale of the residence which respondent contends was jointly owned by petitioner and Mr. Rosen. *49 Petitioner has conceded the propriety of respondent's determination with respect to the unreported interest, but disputes the inclusion of the capital gain in her gross income. The parties agree that the six-year period of limitations applies only if respondent shows that the capital gain in question is includible in petitioner's gross income. [6]
To resolve that issue, we must decide whether petitioner was entitled to share in the proceeds from the sale of the residence. In order to answer this question, we must determine the form of ownership in which the residence was held and the respective rights of persons holding property in that form of ownership. These matters must be answered by reference to State law, which in this case is Ohio law. Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967); *50 Morgan v. Commissioner, 309 U.S. 78, 80 (1940); Bour v. Commissioner, 23 T.C. 237, 240 (1954); see Redmon v. United States, 471 F.2d 687 (6th Cir. 1972); Morgan v. Finnegan, 182 F.2d 649, 650 (8th Cir. 1950); Sandberg v. Commissioner, 8 T.C. 423, 430 (1947). Under Commissioner v. Estate of Bosch, supra, we must apply the law as announced by the Supreme Court of Ohio, and, if there is no decision of that highest court, we must apply what we find to be the law of Ohio, giving proper regard to the decisions of other courts of the State. The form of ownership in which the residence was held depends on the intention of the parties to the conveyance, which is to be determined based on a reading of the entire instrument of conveyance. Hinman v. Barnes, 66 N.E.2d 911, 916 (Ohio 1946); Metzger v. Joyce, 41 N.E.2d 261, 262 (Ohio Ct. App. 1941). After reviewing the 1973 and 1976 deeds, we conclude that petitioner and Mr. Rosen held the residence *51 as tenants by the entireties [7] at the time it was sold in 1987.
The 1973 deed for the residence conveyed title to petitioner and Mr. Rosen using the formula for creating a tenancy by the entireties prescribed by former Ohio Rev. Code Ann. sec. 5302.17 (Anderson Supp. 1980) (repealed 1985), which governed the creation of estates by the entireties at that time. [8] Therefore, we find that petitioner and Mr. Rosen originally took title to the residence as tenants by the entireties within the meaning *52 of that former provision of Ohio law. Respondent contends that, even if the 1973 deed were to establish that petitioner and Mr. Rosen originally held the residence as tenants by the entireties, the 1976 deed, which contained certain uniform deed restrictions that were being imposed generally on properties located within Hunting Valley, altered the form of tenancy under which the residence was held. We disagree. The 1976 deed stated that it was not intended to alter the form of tenancy in which the property had previously been held. Furthermore, the conveyance to petitioner *53 and Mr. Rosen in the 1976 deed was in the form creating a tenancy by the entireties that was provided under former Ohio Rev. Code Ann. sec. 5302.17. The residence was sold in 1987 while petitioner and Mr. Rosen were still married. We conclude that petitioner and Mr. Rosen held the residence as tenants by the entireties when it was sold. Central National Bank v. Fitzwilliam, 465 N.E.2d 408, 411 (Ohio 1984); Koster v. Boudreaux, 463 N.E.2d 39, 45 (Ohio Ct. App. 1982); Donvito v. Criswell, 439 N.E.2d 467, 471 (Ohio Ct. App. 1982). We next consider what rights petitioner had under Ohio law as a tenant by the entireties with respect to the residence. The parties do not disagree that if petitioner were entitled under Ohio law to share in the proceeds from the sale of the residence, she would be taxed on the gain from her share. [9] *54 Their disagreement relates to whether petitioner was entitled under Ohio law to share in the proceeds from the sale of the residence. [10]
Petitioner contends that she was entitled to none, and Mr. Rosen was entitled to all, of the sale proceeds under the common law principles governing tenancies by the entireties. She concludes that therefore none of the gain on that sale is taxable to her and all is taxable to him. In advancing this position, petitioner relies upon Central National Bank v. Fitzwilliam, supra. *55 There, the Supreme Court of Ohio stated that, in enacting former Ohio Rev. Code Ann. sec. 5302.17, the legislature created a common law tenancy by the entireties. Respondent contends that petitioner's argument is based on "archaic" law which no longer has vitality. She asserts that, under Ohio law, petitioner was entitled to share in the proceeds from the sale of the residence. Respondent concludes that therefore petitioner must include in gross income the gain from her share of those proceeds. By way of background to our consideration of whether petitioner was entitled under Ohio law to share in the proceeds from the sale of the residence, we note that, under common law, a husband had the rights, to the exclusion of his wife, to possess, and to receive income from, property owned by his wife, regardless whether the property was her separate property or was jointly held property, such as in tenancy by the entireties.[11] These rights of the husband were grounded upon the view at common law that husband and wife were a unified entity that the husband controlled. They were not derived from the form of ownership in which property was held, such as in a tenancy by the entireties. *56 E.g., Fairclaw v. Forrest, 130 F.2d 829, 832-833 (D.C. Cir. 1942); Johnson v. Leavitt, 125 S.E. 490, 491 (N.C. 1924); Masterman v. Masterman, 98 A. 537, 539 (Md. 1916); Hiles v. Fisher, 39 N.E. 337, 339 (N.Y. 1895); Pray v. Stebbins, 4 N.E. 824, 826-827 (Mass. 1886). *57 During the nineteenth century, a husband's common law marital rights to possess exclusively, and to receive all income from, property owned by his wife were limited or eliminated by the Married Women's Property Acts (the Acts) that were adopted in various States, including Ohio. Where the courts have ruled that the Acts take away only a husband's common law marital rights in his wife's separate property and do not affect his common law rights in property held with his wife as tenants by the entireties, the husband continues to enjoy the right to possess exclusively, and to receive all the income from, property held in that form of ownership. E.g., Raptes v. Cheros, 155 N.E. 787 (Mass. 1927); Pray v. Stebbins, supra.[12] Where, however, it has been held that the Acts not only alter a husband's common law marital rights in his wife's separate property, but also change his common law rights in property held with her in tenancy by the entireties, the husband and wife each is entitled to possess that property and to share in the income it produces. E.g., Vasilion v. Vasilion, 66 S.E.2d 599, 604 (Va. 1951); *58 Hiles v. Fisher, supra.
We must therefore examine the effect of the Acts adopted in Ohio (Ohio Acts) upon Mr. Rosen's rights in the residence he held with petitioner as tenants by the entireties. There is not a substantial body of Ohio law to guide us because this form of ownership was not recognized in Ohio until 1972. [13] Nonetheless, the paucity of decisions that do exist support respondent's position. *59 Two Ohio appellate decisions have considered the effect of the Ohio Acts upon the rights of a husband and wife in property held in tenancy by the entireties. Koster v. Boudreaux, 463 N.E.2d at 45; Donvito v. Criswell, 439 N.E.2d at 471. Both were cited with approval by the Supreme Court of Ohio in Central National Bank v. Fitzwilliam, 465 N.E.2d 408 (Ohio 1984), and we have no reason to believe that they do not reflect its views with respect to that matter. Both the Koster and Donvito cases construed an early case, Smiley v. Smiley's Administrator, 18 Ohio St. 543 (1869). In Smiley, the Supreme Court of Ohio held that "It was not intended by the [Married Women's Property] act to create for * * * [the wife] new rights, but simply to take away the husband's control over such [rights] as she had." Smiley v. Smiley's Administrator, supra at 544. Relying on the Smiley case, both the Koster and Donvito cases concluded that the Ohio Acts equalized the rights of husband and wife in property held as tenants *60 by the entireties. Koster v. Boudreaux, supra; Donvito v. Criswell, supra. We deduce from these cases that the Ohio Acts eliminated the common law marital rights of a husband to possess exclusively, and to receive all income from, property held in tenancy by the entireties and that therefore both husband and wife are entitled under Ohio law to share possession of, and income from, property held in this form of ownership. Koster v. Boudreaux, supra; Donvito v. Criswell, supra; see Vasilion v. Vasilion, supra; Masterman v. Masterman, 98 A. at 540-541; Hiles v. Fisher, supra.Consequently, we conclude that petitioner and Mr. Rosen both were entitled under Ohio law to share in the proceeds from the sale of the residence. Therefore, each must include in income his or her share of the gain realized on that sale. See Morgan v. Finnegan, 182 F.2d at 650; Sandberg v. Commissioner, 8 T.C. at 430; *61 Upthegrove v. Commissioner, 33 B.T.A. 952 (1936). [14] Accordingly, we sustain respondent's determination to include in petitioner's gross income for 1987 $ 43,873 in capital gain realized from the sale of the residence.
*62 The parties agree that if respondent's determination were to be sustained, the deficiency for 1987 determined by respondent may be assessed under the six-year period of limitations provided by section 6501(e)(1)(A). Therefore, we will proceed to resolve the other issues remaining in this case. Petitioner's Filing Status
Petitioner claimed head of household filing status in her 1987 return. Respondent determined that petitioner's correct filing status was married, filing separately. As applicable to the instant case, section 2(b) defines a head of household as an individual taxpayer who is unmarried at the close of his or her taxable year and who maintains as his or her home a household which constitutes the principal place of abode for more than one-half of the taxable year of a son or daughter of the taxpayer who resides there as a member of that household. Section 2(b) further provides that an individual taxpayer is to be considered as maintaining a household only if he or she furnishes more than one-half of the cost of maintaining that household. The only dispute between the parties as to petitioner's eligibility to claim head of household filing status is whether *63 she furnished over one-half of the total cost of maintaining her household during 1987. [15] Thus, petitioner must establish the amount she contributed to maintaining the household and that that amount exceeded one-half of the total cost. The regulations provide the following guidance concerning the types of expenses to be considered in deciding whether an individual qualifies for head of household status: The cost of maintaining a household shall be the expenses incurred for the mutual benefit of the occupants thereof by reason of its operation as the principal place of abode of such occupants for such taxable year. The *64 cost of maintaining a household shall not include expenses otherwise incurred. The expenses of maintaining a household include property taxes, mortgage interest, rent, utility charges, upkeep and repairs, property insurance, and food consumed on the premises. Such expenses do not include the cost of clothing, education, medical treatment, vacations, life insurance, and transportation. In addition, the cost of maintaining a household shall not include any amount which represents the value of services rendered in the household by the taxpayer or by a person qualifying the taxpayer as a head of household or as a surviving spouse. [Sec. 1.2-2(d), Income Tax Regs.]
Both petitioner and Mr. Rosen testified at trial concerning their respective contributions to maintaining petitioner's household during 1987. Although her testimony was vague at times, we found petitioner to be a completely credible witness. In contrast, we did not find Mr. Rosen to be credible. This circumstance aids petitioner's case, for the evidence concerning her filing status consists principally of conflicting assertions by petitioner and Mr. Rosen as to who paid various items of expense connected with the *65 family and the household during the year at issue. Nonetheless, as discussed below, petitioner did not submit any evidence establishing the total cost of maintaining the household. Nor did she submit any canceled checks or other documentary evidence of the expenses that she paid. Petitioner reported in her 1987 return a net amount of $ 14,063 as earnings as a consultant to United Way Services, on which no Federal income tax was withheld. Petitioner borrowed $ 9,600 from her stepfather in January 1987. She testified that during 1987 she spent those earnings and borrowed funds on her children and herself. However, some of that money was used for items, such as clothing and spending money, that are not considered household expenses under section 1.2-2(d), Income Tax Regs.[16] Petitioner did not attempt to estimate the total amount that she expended only for household expenses within the meaning of that regulation. Therefore, we cannot conclude on the instant record that all of petitioner's earnings and borrowed funds during 1987 should be treated as having been spent on the types of items that qualify as household expenses. *66 We are aware that in Griffith v. Commissioner, 35 T.C. 882, 893-894 (1961), we allowed head of household filing status despite "meager and circumstantial" evidence where we were satisfied that there was no "practical likelihood" that amounts contributed by persons besides the taxpayer exceeded his or her expenditures to maintain the household. However, we are constrained to conclude on the present record that petitioner does not meet the standard articulated in the Griffith case. Petitioner was not the sole provider of support to her household during 1987. At trial, petitioner acknowledged that, between January and July 1987, Mr. Rosen gave her checks totaling $ 3,650. In addition, while petitioner testified, and we accept, that she paid for rent, utilities, and food at the house into which she and her children moved after leaving the residence in September 1987, she admitted that Mr. Rosen paid at least some of the bills for utilities such as gas, electricity, water, and local and long distance telephone service with respect to the residence during 1987. Petitioner also acknowledged that it was possible Mr. Rosen provided as much as $ 26,000 *67 to support the household. Based on Mr. Rosen's testimony, not all of that amount was spent for the types of expenses listed in section 1.2-2(d), Income Tax Regs. Mr. Rosen claimed to have paid for automobile and medical insurance, athletic club memberships, vacations, [17] a television, and a video cassette recorder; none of these expenditures qualifies as a household expense. Nonetheless, given petitioner's admissions concerning Mr. Rosen's expenditures to maintain her household during 1987, it appears that there is a practical likelihood that Mr. Rosen may have paid more of the items listed in that regulation than she did. *68 Consequently, even though we are satisfied that petitioner contributed significantly to the maintenance of her household, on the instant record, we cannot allow her claim to head of household filing status. Petitioner admitted that Mr. Rosen afforded her household an additional source of support. Petitioner has not demonstrated that her payments for the types of household expenses enumerated in section 1.2-2(d), Income Tax Regs., exceeded his. See Teeling v. Commissioner, 42 T.C. 671, 682-684 (1964). Accordingly, petitioner has not carried her burden of proving that she contributed over one-half of the cost of maintaining her household during the year at issue and therefore is not entitled to head of household filing status. Additions to Tax for Negligence
Respondent determined that petitioner's underpayment of tax for 1987 was due to negligence or disregard of rules or regulations and that petitioner was therefore liable for the additions to tax provided by section 6653(a)(1)(A) and (B). [18] Since respondent does not argue on brief that petitioner disregarded rules or regulations, we will consider only the question of petitioner's alleged *69 negligence in deciding whether respondent's determination is to be sustained. Negligence is defined as a lack of due care or a failure to act as a reasonable person would under the circumstances. Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg. T.C. Memo. 1991-179. *70 Petitioner's underpayment for the year at issue results from four items: (1) Her share of the gain realized from the sale of the residence; (2) her share of the interest earned during 1987 on the escrow account; (3) her claim of head of household filing status; and (4) the earned income credit disallowed by respondent. Petitioner has advanced arguments on brief insofar as the additions to tax for negligence are concerned only with respect to her omission of a share of the gain on the sale of the residence. She has not made any argument concerning those additions with respect to the unreported interest, which she admitted should have been included in her gross income, or the other items giving rise to the underpayment for 1987. We therefore will treat petitioner as having conceded that at least a portion of her 1987 underpayment is attributable to negligence. Accordingly, we sustain respondent's determination with respect to the five percent addition to tax imposed by section 6653(a)(1)(A). Because the addition to tax imposed by section 6653(a)(1)(B) applies only to the portion of petitioner's underpayment attributable to negligence, we must consider petitioner's claim that the *71 omission from her 1987 return of any gain realized from the sale of the residence was due to reasonable cause and therefore was not negligent. Petitioner asserts two reasons in support of her claim. First, she argues that the pertinent State law as to whether she was entitled to share in the proceeds from that sale, and therefore the applicable Federal income tax law as to whether she was taxable on a share of the gain therefrom, are complex and had not been settled at the time she filed her 1987 return. Second, petitioner contends that it was her understanding that Mr. Rosen was to pay the tax on that gain. We agree with, and therefore address only, petitioner's first contention. Imposition of the addition to tax for negligence is inappropriate if the deficiency turns on relatively complex legal issues with respect to which there can be an honest difference of opinion. Yelencsics v. Commissioner, 74 T.C. 1513, 1533 (1980). Having analyzed the pertinent State law relating to the rights of spouses in real property held in tenancy by the entireties, we conclude that the question whether petitioner must recognize a share of the gain realized from *72 the sale of the residence was in this instance sufficiently complicated to excuse her failure to report that gain in her 1987 return. See Denbow v. Commissioner, T.C. Memo. 1989-92. Therefore, we hold that the interest portion of the addition to tax imposed by section 6653(a)(1)(B) is applicable only to the portion of the underpayment attributable to items other than the omission of gain from the sale of the residence. Addition to Tax for Substantial Understatement of Income Tax
Respondent determined that petitioner was liable for the 25 percent addition to tax provided by section 6661 for substantial understatement of income tax. An understatement exists where the amount of tax shown on the taxpayer's return is less than the amount required to be shown in his or her return. Sec. 6661(b)(2)(A). In the case of individuals, an understatement is substantial where it exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the taxpayer's return. Sec. 6661(b)(1)(A). Excepting items attributable to tax shelters, the amount of the understatement is reduced by items with respect to which the taxpayer had substantial authority *73 for his or her position or for which relevant facts affecting tax treatment were adequately disclosed. [19]Sec. 6661(b)(2)(B). On brief, petitioner argues that there was substantial authority for the omission from her 1987 return of any gain from the sale of the residence. She makes no argument with respect to the other items contributing to the understatement. We thus deem those other items to have been conceded and address only petitioner's contentions concerning the gain from the sale of the residence. In order to satisfy the "substantial authority" standard of section 6661(b)(2)(B)(i), petitioner must show that the weight of authorities supporting her position is substantial in relation to *74 those supporting a contrary position. Antonides v. Commissioner, 91 T.C. 686, 702 (1988), affd. 893 F.2d 656 (4th Cir. 1990). Although the standard is less stringent than the "more likely than not" standard, it is stricter than the "reasonable basis" standard that usually is sufficient to prevent imposition of the addition to tax for negligence. Sec. 1.6661-3(a)(2), Income Tax Regs. A taxpayer may have substantial authority for a position even where it is supported only by a well-reasoned construction of the applicable statutory provision. Sec. 1.6661-3(b)(3), Income Tax Regs.
As noted above, the authorities bearing on the question of whether petitioner was entitled to share in the proceeds from the sale of the residence are fairly limited. We have not found any authority in either the courts of Ohio or this Court squarely holding that a wife is entitled under Ohio law to share in the proceeds from the sale of property held in tenancy by the entireties. From the paucity of authorities that are available, we conclude that petitioner's position was supported by a well-reasoned, albeit erroneous, construction of Ohio law, *75 which could be refuted only after a complex and extensively researched analysis of various pertinent State and Federal authorities. The principal case relied on by petitioner, Central National Bank v. Fitzwilliam, 465 N.E.2d 408 (Ohio 1984), does stand for the proposition advanced by petitioner, namely, an estate by the entireties under Ohio law possesses the characteristics of that form of ownership as it was known at common law. The Central National case, analyzed together with an examination of the common law attributes of a tenancy by the entireties under the law of other States, such as Massachusetts, enabled petitioner to reach a well-reasoned, although incorrect, conclusion that the common law marital rights of a husband continued to exist with respect to property held in such a tenancy. Consequently, we conclude that petitioner had substantial authority [20] *76 for not including in her 1987 return any portion of the gain realized from the sale of the residence. [21]
Accordingly, if the understatement of tax recomputed in accordance with this opinion and excluding any portion of *77 the understatement attributable to petitioner's omission of the gain from the sale of the residence exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown on petitioner's 1987 income tax return, petitioner will be liable for the addition to tax imposed by section 6661. To reflect the foregoing, Decision will entered under Rule 155. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The parties agree that, in the event we were to sustain respondent's determination on this issue, the six-year period of limitations provided by sec. 6501(e)(1)(A)↩ would apply and therefore respondent would not be barred from assessing and collecting any tax determined to be due for 1987.
3. The record does not reflect whether a Form 1099-B was also issued to Mr. Rosen.↩
4. Although one-half of the $ 965.10 in interest earned by the escrow account for 1987 is $ 482.55, Mr. Rosen evidently rounded this sum to $ 483.↩
5. Mr. Rosen reported 60 percent of the total proceeds from the sale of the residence in his 1987 tax return, having allocated 20 percent of those proceeds to a barn and fences he used in a business conducted at the residence. Under respondent's theory for including gain from the sale of the residence in petitioner's gross income, it might be argued that petitioner was entitled to one-half of the total sale proceeds. However, respondent seeks to include in petitioner's gross income the gain only on the portion of the sale proceeds unreported by Mr. Rosen. Consequently, in the event that we were to uphold respondent's position, we will not disturb her determination of the amount of gain from the sale of the residence that is includible in petitioner's gross income for 1987.↩
6. Resolution of petitioner's entitlement to the earned income credit will flow automatically from our conclusions concerning this capital gain as well as her claimed head of household filing status.↩
7. Although, as one Ohio court has noted, "the word 'entirety' might be intellectually preferable to 'entireties,'" Donvito v. Criswell, 439 N.E.2d 467, 471 (Ohio Ct. App. 1982), the statute that created this estate under Ohio law labeled it an "estate by the entireties". Ohio Rev. Code Ann. sec. 5302.17↩ (Anderson Supp. 1980) (repealed 1985). Accordingly, we will follow herein the terminology of that statute and will refer to this form of ownership as an estate or tenancy by the entireties.
8. This section was repealed effective April 4, 1985, when it was replaced by a section creating a "survivorship tenancy". Ohio Rev. Code Ann. sec. 3502.17 (Anderson Supp. 1992). Ohio Rev. Code Ann. sec. 5302.21(A) (Anderson 1989) provides that the repeal of former Ohio Rev. Code Ann. sec. 5302.17↩ (Anderson Supp. 1980) (repealed 1985) did not affect the validity of tenancies by the entireties that were created while the former statute was in effect.
9. This agreement is consistent with the tax law governing jointly held property because a person is taxed on the income to which he or she is entitled under State law. Redmon v. United States, 471 F.2d 687, 690 (6th Cir. 1972); Morgan v. Finnegan, 182 F.2d 649, 650 (8th Cir. 1950); Sandberg v. Commissioner, 8 T.C. 423, 430↩ (1947).
10. In advancing their respective arguments on this question, the parties have assumed that the form of ownership in which the proceeds from the sale of the residence were held was the same as the form of ownership in which the residence was held. Therefore, we will accept that assumption for purposes of resolving the present issue. We note, however, that, even if a State allows real property to be held in an estate by the entireties, it does not necessarily follow that the proceeds from the sale of that property are also held in that form of ownership. See cases collected in DiSabatino, Annotation, Proceeds or Derivatives of Real Property Held by Entirety as Themselves Held by Entirety, 22 A.L.R. 4th 459↩ (1983).
11. Some courts describe a husband's right to possess his wife's property to the exclusion of his wife as his right to use, control, or manage that property. Madden v. Gosztonyi Savings & Trust Co., 200 A. 624, 628 (Pa. 1938); Childs v. Childs, 199 N.E. 383, 386 (Mass. 1936); Ganoe v. Ohmart, 254 P. 203, 204 (Or. 1927); Dorsey v. Kirkland, 99 S.E. 407, 409 (N.C. 1919); Pray v. Stebbins, 4 N.E. 824, 826-827 (Mass. 1886). Hereinafter, we will use the term "possess" or a similar term to describe a husband's right at common law to use, control, or manage his wife's property. Under common law, the term "income" encompassed only items such as rent, interest, or profits derived from the use of property subject to a husband's marital rights and did not include gain realized on its sale. Ronan v. Ronan, 159 N.E.2d 653, 656 (Mass. 1959); Campagna v. Campagna, 150 N.E.2d 699, 703↩ (Mass. 1958). In light of the passage of the Married Women's Property Acts in Ohio, discussed below, we have not found it necessary to decide whether the right of possession also entitled a husband at common law to receive all proceeds from the sale of property he held in tenancy by the entireties with his wife.
12. It should be noted that the law of Massachusetts concerning the rights of a husband and wife in property held as tenants by the entireties has changed since these decisions were rendered. Coraccio v. Lowell Five Cents Savings Bank, 612 N.E.2d 650, 654↩ (Mass. 1993).
13. It had been disparaged by an early case, Sergeant v. Steinberger, 2 Ohio 305 (1826), and was not recognized in Ohio until passage in 1972 of former Ohio Rev. Code Ann. sec. 3502.17. Central National Bank v. Fitzwilliam, 465 N.E.2d 408, 410↩ (Ohio 1984). As discussed above in note 8, the form of ownership known as an estate by the entireties has been replaced by a statutorily created "survivorship tenancy".
14. In Commissioner v. Hart, 76 F.2d 864 (6th Cir. 1935), affg. 27 B.T.A. 528 (1933), the United States Court of Appeals for the Sixth Circuit, the court to which an appeal in the instant case would lie, concluded that, under Michigan law, a husband's creditors could not reach installment payments due on a contract for the sale of land held in tenancy by the entireties, rent from that property could not be garnished by those creditors, and the rent, profits, or income from that property were not subject to process by those creditors. Consequently, the Sixth Circuit found that a property held in tenancy by the entireties under Michigan law is analogous to community property. It held that therefore interest on a contract for the sale of land held in tenancy by the entireties is taxable in equal shares to a husband and wife. Id.
We also note that the predecessors of this Court, relying on the construction of Michigan law stated in the Hart case, reached the same conclusion, viz., income from property held in tenancy by the entireties under Michigan law is taxable in equal shares to a husband and wife. Greene v. Commissioner, 7 T.C. 142, 152 (1946); Gessner v. Commissioner, 32 B.T.A. 1258, 1260 (1935). We need not decide here whether the factors relied on by the Court of Appeals for the Sixth Circuit are sufficient, standing alone, to justify including a share of the gain from the sale of property held in tenancy by the entireties in the income of each tenant because we rely on other grounds for our conclusion that petitioner must include in her gross income the gain from the sale of the residence that was determined by respondent.↩
15. Although petitioner was married during 1987, respondent does not claim that petitioner's marital status disqualifies her from claiming head of household filing status. We conclude therefore that respondent concedes that petitioner satisfies the tests of sec. 7703(b), under which a married person is considered unmarried for purposes of claiming head of household filing status. Sec. 2(c)↩.
16. Most of petitioner's testimony at trial consisted of evidence concerning the amount of support she provided her children. It appears to us that petitioner may be confusing the support test for claiming the dependency exemption under sec. 151(c) with the test provided for purposes of claiming head of household status. The types of expenditures considered for purposes of the dependency exemption support test are different in certain respects from the ones considered for purposes of claiming head of household filing status. Teeling v. Commissioner, 42 T.C. 671, 682-684 (1964). For example, the cost of clothing, education, and medical and dental care are counted for purposes of the dependency exemption support test, sec. 1.152-1(a)(2)(i), Income Tax Regs., but are not counted for purposes of establishing whether a taxpayer is a head of household, sec. 1.2-2(d), Income Tax Regs.↩ Consequently, a taxpayer establishing that he or she has provided over one-half of the support of a dependent may not necessarily be entitled to claim head of household filing status.
17. Petitioner reserved an objection in the stipulation of facts as to the relevance to this case of Mr. Rosen's having taken a vacation with his children during 1987. We find that the fact that this vacation occurred and that Mr. Rosen paid for it is relevant for purposes of deciding whether the $ 26,000 Mr. Rosen may have spent in connection with petitioner and their children during 1987 was paid for items which may properly be treated under sec. 1.2-2(d), Income Tax Regs.↩, as having been expended for the maintenance of petitioner's household.
18. The addition provided by sec. 6653(a)(1)(A) is equal to five percent of the underpayment for the tax year if any portion of the underpayment is due to negligence. The addition provided by sec. 6653(a)(1)(B) is equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence. We note that sec. 6653(g) is potentially applicable to the instant case. Sec. 6653(g) provides for the imposition of the addition to tax for negligence with respect to an underpayment resulting from omission of an item required to be reported on an information return unless the taxpayer shows by clear and convincing evidence that he or she was not negligent in omitting the item. The items of income omitted from petitioner's 1987 gross income (namely, the interest on the escrow account and the proceeds from the sale of petitioner's residence) are required to be so reported. Secs. 6049(a), 6045(a), (e). However, respondent has not relied on sec. 6653(g)↩ in support of her determination, and we therefore will not consider it.
19. Petitioner does not argue that adequate disclosure was made in her 1987 return of any of the items comprising the understatement of tax for that year. We conclude therefore that petitioner concedes that she did not make the adequate disclosure that would have shielded her from the addition to tax imposed by sec. 6661↩.
20. While we have found other authorities that we have concluded are contrary to petitioner's construction of the law (e.g., Koster v. Boudreaux, 463 N.E.2d 39, 45 (Ohio Ct. App. 1982), and Donvito v. Criswell, 439 N.E.2d at 471), there may be substantial authority for more than one position with respect to the same item. Sec. 1.6661-3(b)(1), Income Tax Regs.↩
21. It is noteworthy that respondent may, in her discretion, waive the addition to tax imposed by sec. 6661 upon a showing that there was reasonable cause for the understatement and that a taxpayer acted in good faith. Sec. 6661(c). Although the record is silent as to whether respondent was asked to exercise her discretion under sec. 6661(c) and refused to do so, we note that the circumstances of the instant case relating to the gain from the sale of the residence would, in our view, have enabled respondent to exercise her discretion to waive the addition to tax under sec. 6661↩ as it pertains to the omission from petitioner's 1987 return of that gain. These include the complexity of the law governing whether a portion of that gain should have been reported in petitioner's return, petitioner's inexperience in Federal tax matters, and her honest, albeit erroneous, belief that responsibility under the Federal income tax laws for payment of all the tax on that gain fell on Mr. Rosen.