T.C. Summary Opinion 2001-13


UNITED STATES TAX COURT


LINDA CARTER ZIMMERMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11273-99S.                Filed February 15, 2001.


Linda Carter Zimmerman, pro se.

<u>Ross M. Greenberg</u>, for respondent.


CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code in effect for 1994.  The decision to be entered is
not reviewable by any other court, and this opinion should not be
cited as authority.

Respondent determined a $5,740 deficiency in petitioner's 1994 Federal income tax and a $1,435 addition to tax under section 6651(a)(1) for that year.  The issues for decision are: (1) Whether petitioner's share of the gain realized from the sale of property jointly owned with her former spouse must be included in her 1994 income, and (2) whether petitioner had reasonable cause for her failure to file a timely 1994 Federal income tax return.

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner resided in Jacksonville, Florida.

Petitioner and Richard Edward Zimmerman, Jr. (petitioner's former spouse), were married in 1972.  They separated prior to or during 1991, and an action for divorce was filed in the appropriate local court during that year (the divorce proceeding).  They were divorced by Final Judgment of Dissolution of Marriage, issued on August 14, 1998, by the Circuit Court in Jacksonville, Duval County, Florida (the divorce decree).

In 1979, petitioner and her former spouse purchased a townhouse in Pensacola, Florida, for $64,832 (the townhouse). Approximately $44,000 of the purchase price was financed.  They took title to the townhouse as tenants by the entireties, and, although the record contains no specific evidence on the point,

presumably they were jointly liable for the financed amount.

Petitioner and her former spouse used the townhouse as their residence for a while, but for the majority of the time that they owned it, the townhouse was held for rent or rented to others.

In 1994, while the divorce proceeding was pending, petitioner's former spouse suggested that they sell the townhouse. Petitioner agreed, subject to her understanding that she would receive one-half of the proceeds from the sale. On July 15, 1994, the townhouse was sold for $88,000. At that time petitioner lived in Jacksonville, Florida, and petitioner's former spouse lived in Maryland. Neither petitioner nor her former spouse attended the settlement. The documents necessary to effectuate the transaction were mailed to petitioner, who signed them and returned them by mail to the settlement attorney.

The sale of the townhouse produced a gain of $54,998. Although the details of the settlement have not been provided, we assume that portions of the proceeds from the sale of the townhouse were used to satisfy any outstanding encumbrances on the property and to pay selling and/or settlement fees. In any event, from the $88,000 selling price, petitioner and her former spouse netted $47,946.73 in the form of a single check payable to both (the joint check). Petitioner wanted separate checks issued, but for reasons not fully explained, the joint check was issued.

Shortly after the settlement, the joint check was mailed to petitioner's former spouse. After receiving the joint check, he traveled to Jacksonville to have petitioner endorse it. When they met for this purpose, petitioner's former spouse proposed that the proceeds of the check be divided on the basis of a 75/25 percent split in his favor. Petitioner insisted upon the equal division previously agreed upon and refused to endorse the joint check.

Instead of returning to Maryland with the joint check, petitioner's former spouse deposited the joint check, without petitioner's endorsement, into a joint checking account (the joint account). The joint account had been established years before in connection with a loan made from a credit union in Jacksonville of which petitioner's former spouse was a member. It is unclear whether petitioner incurred any liability in connection with this loan or, for that matter, whether she was even aware of the existence of the joint account. As of the date of the deposit, the outstanding balance on the loan was approximately $8,000. Petitioner's former spouse directed the teller who accepted the deposit to satisfy the outstanding balance on the loan from the proceeds of the joint check.

Next, petitioner's former spouse, a practicing attorney and former Navy JAG officer, transferred the balance of the proceeds of the joint check from the joint account to his checking

account.  He did so in increments of less than $10,000, because of his belief, as he explained in a deposition taken in connection with the divorce proceeding, that by doing so he would not "necessarily alert the IRS, and those that have interest, in those amounts, to look at the transaction."

As it turned out, as of the date of trial, almost 6 years after the event, petitioner had not actually received any of the proceeds from the sale of the townhouse.

Pursuant to petitioner's claim to her one-half share of the joint check made in the divorce proceedings, the divorce decree: (1) Recognizes that under Florida law, petitioner and her former spouse had equal rights to any income generated by the sale of the townhouse; (2) notes that petitioner's former spouse improperly appropriated 100 percent of the proceeds from the sale of the townhouse; and (3) grants petitioner the following relief:

> [Petitioner's former spouse] shall pay to * * * [petitioner] as and for lump sum alimony to reimburse her for the loss sustained by her as a result of * * * [petitioner's former spouse's] misappropriation of 100% of the proceeds from the sale of three properties for which * * * [petitioner's former spouse] claimed only one-half of the gain on his income taxes, the sum of $63,440.00.  This sum shall be paid directly by * * * [petitioner's former spouse] to * * * [petitioner] within five (5) days of the date of the entry of this Final Judgement.

The three properties referred to in the above-quoted paragraph include the townhouse.[1]  Elsewhere in the divorce decree, the divorce court declared that petitioner "should not have to pay" any Federal income tax attributable to the sale of the townhouse.

Petitioner's former spouse appealed the divorce decree.  In an opinion filed March 9, 2000, the Court of Appeals of Florida affirmed the decree except as to one item of relief not relevant here.  See Zimmerman v. Zimmerman, 755 So. 2d 730 (Fla. Dist. Ct. App. 2000).

Petitioner's 1994 Federal income tax return was signed by her and the return preparer on November 16, 1996.  It was filed on November 19, 1996.  Taking into account an extension, petitioner's 1994 return was due to be filed on or before August 15, 1995.  Although no direct evidence on the point has been provided, the record suggests that petitioner computed her 1994 Federal income tax liability under the cash method of accounting (formally known as the cash receipts and disbursement method of accounting).  The adjusted gross income reported on her 1994 return consists entirely of her wages as an employee of the Duval County School Board.  She did not report any income from the sale of the townhouse or otherwise disclose the transaction on her return.

---

[1] It is unclear what properties, other than the townhouse, the divorce court refers to in the above-quoted provision.  The reference to other properties might be an error.

In the notice of deficiency, respondent determined that one-half of the gain realized from the sale of the townhouse is includable as long-term capital gain in petitioner's 1994 income and adjusted her income for that year accordingly. Respondent also determined that petitioner is liable for the late filing addition to tax under section 6651(a)(1) because her 1994 return, due to be filed on or before August 15, 1995, was not filed until November 19, 1996.

## Discussion

There is no dispute between the parties as to the amount of gain realized upon the sale of the townhouse. Furthermore, consistent with Florida law and as reflected in the divorce decree, the parties agree that petitioner was entitled to receive one-half of the gain, or at least one-half of the net proceeds, from the sale of the townhouse. See Ball v. Ball, 335 So. 2d 5, 7 (Fla. 1976), superseded by statute on other grounds as stated in Robertson v. Robertson, 593 So. 2d 491 (Fla. 1991); see also Landay v. Landay, 429 So. 2d 1197 (Fla. 1983). Petitioner does not appear to dispute, as a general proposition, that gains derived from dealings in property are included within the definition of gross income. See sec. 61(a)(3).

Nevertheless, petitioner argues that she need not include any of the gain from the sale of the townhouse in her 1994 income

because the divorce decree, in effect, so states. Although petitioner's ownership interest in the townhouse was properly a matter before the divorce court, her 1994 Federal income tax liability was not. State law determines the property ownership of a taxpayer; Federal law controls the Federal income tax consequences of transactions involving the property. See Aquilino v. United States, 363 U.S. 509, 512-513 (1960).

The divorce court did not adjust petitioner's preexisting ownership interest in the townhouse. Had it done so, the Federal income tax consequences resulting from the sale of the townhouse could have been affected. See Urbauer v. Commissioner, T.C. Memo. 1997-227. The relevant provisions in the divorce decree relied upon by petitioner in support of her argument might create a remedy for her as against her former spouse, but because those provisions did not adjust her preexisting ownership interest in the townhouse, they are not controlling here. See Neeman v. Commissioner, 13 T.C. 397, 399 (1949), affd. 200 F.2d 560 (2d Cir. 1952); Urbauer v. Commissioner, supra. Accordingly, petitioner's share of the gain realized from the sale of the townhouse cannot be excluded from her income because of certain provisions contained in the divorce decree.

Petitioner next argues that she should not have to include any gain from the sale of the townhouse in her 1994 income because, as of the close of that year, she had not received any

of it.  Initially, we note that petitioner's claim in this regard is not, as a technical matter, entirely correct.  Although we cannot tell exactly how much, a substantial part of the proceeds from the sale of the townhouse was used to satisfy the debt that petitioner incurred at the time that she and her former spouse purchased it.  Payment to a taxpayer's creditor on the taxpayer's behalf is tantamount to payment to the taxpayer.  See Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729 (1929); Poczatek v. Commissioner, 71 T.C. 371, 378 (1978).  In this case, despite the reprehensible conduct of petitioner's former spouse in connection with the net proceeds from the sale of the townhouse, the economic benefit petitioner enjoyed in the form of debt reduction cannot be ignored.  See Sowell v. Commissioner, 302 F.2d 177, 180-181 (5th Cir. 1962); Urbauer v. Commissioner, supra.

Furthermore, the fact that petitioner did not receive any of the proceeds of the sale of the townhouse immediately after its sale, was due, at least in part, to petitioner's conduct. Although we sympathize with her, it remains that it was her choice not to attend the settlement.  Petitioner did not explain why she elected not to attend the settlement.  Perhaps it was inconvenient for her to travel from the location where she was living at the time to the location where the settlement was conducted.  Nevertheless, she could have attended the settlement and ensured the receipt of the sale proceeds to which she was

legally entitled. Her right to do so provided her with the opportunity to exercise sufficient control over her share of the proceeds so as to consider those proceeds received by her. "[I]ncome is received or realized when it is made subject to the will and control of the taxpayer and can be, except for his own action or inaction, reduced to actual possession." Loose v. United States, 74 F.2d 147, 150 (8th Cir. 1934).

Under Florida law and as expressly noted by the divorce court, petitioner, as a joint owner of the townhouse, was entitled to one-half of the income attributable to the property. In those instances where each spouse has an equal right to the income from the jointly held property, the usual rule is that one-half of the income from the property is properly taxable to each spouse. See Urbauer v. Commissioner, supra; Rosen v. Commissioner, T.C. Memo. 1994-40; Rosenbaum v. Commissioner, T.C. Memo. 1992-287, affd. per order (7th Cir., July 28, 1993); Finney v. Commissioner, T.C. Memo. 1976-329. The usual rule applies even to those situations, such as here, where one spouse does not actually receive any of the income attributable to the jointly held property.

Petitioner authorized the sale of the townhouse. The record contains no details of the settlement documents that petitioner signed and returned to the settlement agent. Nevertheless, in the absence of anything in the record that suggests otherwise, we

assume that the typical documents were involved, including some form or document wherein petitioner authorized the settlement agent to mail the joint check to her former spouse rather than to her. Having consented to and authorized the sale of the townhouse, and the manner in which the transaction occurred, she is responsible for the Federal income tax consequences that stem from it. Respondent's determination that petitioner must include in her 1994 income her share of the gain from the sale of the townhouse is therefore sustained.

Respondent also determined that petitioner is liable for the addition to tax for her failure to file a timely 1994 Federal income tax return. Taking into account an extension, petitioner's 1994 return was due to be filed on or before August 15, 1995. See sec. 6081(a). Her return was not filed until November 19, 1996.

Section 6651(a)(1) provides for an addition to tax in an amount equal to 5 percent of the amount of the tax shown on the return for the first month, plus an additional 5 percent for each additional month or fraction of a month during which the failure to file continues, up to a maximum of 25 percent of the tax in the aggregate. This addition to tax is applicable unless the taxpayer can demonstrate that the failure is due to a reasonable cause and not due to willful neglect. See United States v. Boyle, 469 U.S. 241, 245-246 (1985).

The evidence demonstrates that petitioner's 1994 return was filed well beyond the date it was due.  Petitioner did not explain why her return was filed after the date it was due.  There is nothing in the record that suggests that petitioner's failure timely to file her return was due to reasonable cause and not due to willful neglect.  Consequently, we sustain respondent's determination that she is liable for the addition to tax under section 6651(a)(1).

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.