JOURNAL ENTRY AND OPINION
{¶ 1} In this consolidated appeal, defendants-appellants, Park West Galleries, Inc. ("Park West") and Buckingham, Doolittle 
Burroughs, LLP. ("Buckingham") appeal the judgment of the trial court. Park West appeals the court's determination that its judgment lien did not attach to the real property owned by appellees, Laszlo and Katalin Dus ("Dus"). It also argues the court abused its discretion in allowing Katalin Dus to file an answer to its cross-claim and motion for summary judgment out of rule.
 {¶ 2} Buckingham's separate appeal argues the trial court erred in granting Katalin Dus summary judgment instead of granting its motion for summary judgment. We affirm the judgment of the trial court, but not solely for the same reasons.
 {¶ 3} In 1985, the Duses, married since 1963, purchased residential property in Brecksville, Ohio. The home was titled to and held by the Duses as tenants by the entireties. Plaintiff-appellee, First Federal Savings Loan Association of Lakewood ("First Federal") held the mortgage on the property.
 {¶ 4} In June 1995, Park West obtained and filed a judgment lien against Laszlo Dus in the amount of $354,532.00. By September 1997, the Duses were divorced. Katalin Dus was represented in the divorce proceedings by Buckingham. By the end of the case, Katalin allegedly owed $43,000 in attorney fees. That amount was memorialized in the Duses' divorce decree. According to the decree, filed in October 1997, the court awarded Katalin $43,000 in attorney fees, ordered the property to be sold, ordered Laszlo Dus to continue making the mortgage payments, and ordered the $43,000 for Katalin's attorney fees to be paid to her out of the sale proceeds.
 {¶ 5} The property was not sold and Laszlo defaulted on the mortgage payments to First Federal. As a result of the default, First Federal filed a complaint in foreclosure in April 1999, naming Park West and Buckingham as having an interest in the property.[1]
 {¶ 6} Park West answered the complaint and filed against Laszlo Dus a cross-claim based upon its 1995 judgment against him. Buckingham also answered the complaint and filed its own cross-claim for foreclosure of the property based upon its $43,000 lien.
 {¶ 7} In April 2000, Katalin filed a motion for summary judgment. In that motion, Katalin argued Park West's lien against Laszlo Dus could not be enforced against her interest in the Brecksville property because she and her husband held the property as tenants in the entireties.
 {¶ 8} The parties agree that Laszlo Dus never filed an answer to Park West's cross-claim against him. It is also agreed that though Katalin Dus failed to timely file a response to Park West's claim, the trial court did grant her leave to do so which resulted in the property being withdrawn from the foreclosure sale list.
 {¶ 9} The trial court granted Katalin's motion for summary judgment against Park West finding that its lien did not attach to the property. Further, even though it is agreed Katalin never moved for summary judgment against Buckingham, the court, nonetheless, granted Katalin summary judgment against Buckingham finding that it had a 1997 lien for attorney fees, but it never attached to the property either.
 {¶ 10} The trial court determined that neither Park West's nor Buckingham's liens ever attached to the property because when they were filed, 1995 and 1997 respectively, the Duses still held the Brecksville property as tenants in the entireties. It is from these rulings by the trial court that Park West and Buckingham appeal. Because Park West's first assignment of error and Buckingham's sole assignment of error are related, we address them together.
 {¶ 11} Park West's Assignment of Error One states:
The Trial Court Committed An Error Of Law In Ruling That The Judgment Lien Of The D-appellant, Park West Galleries, Inc. Did Not Attach To The Property Of The Co-defendants Laszlo And Katalin Dus.
 {¶ 12} Buckingham's sole Assignment of Error states:
The Trial Court Erred In Granting Summary Judgment In Favor Of Defendant-appellee Katalin Dus As To The Claim Of Defendant-appellant Buckingham, Doolittle Burroughs, LLP.
 {¶ 13} Park West argues that when the Duses were divorced in September 1997, its 1995 lien against Laszlo Dus immediately became enforceable against the property. Buckingham presents essentially the same claim, namely, that when the divorce decree was filed approximately one month after the Dus' divorce, Buckingham obtained a $43,000 lien for attorney fees, which also immediately attached to the Brecksville property. Park West and Buckingham maintain that the Duses' divorce severed the tenancy in the entireties and their liens attached to the property because the Duses were then only joint tenants.
 {¶ 14} It is well settled that when reviewing summary judgment, we review the judgment independently and without any deference to previous determination by the trial court. Midwest Specialties, Inc. v. FirestoneTire Rubber Co. (1988), 42 Ohio App.3d 6, 536 N.E.2d 411. The standard of review in this court is de novo. Szymczak v. Szymczak,
Cuyahoga App. No. 79109, 2002-Ohio-4766; AAAA Enterprises, Inc. v. RiverPlace Community Urban Redevelopment Corp. (1990) 50 Ohio St.3d 157.
 {¶ 15} Summary judgment is appropriate only when the following conditions have been satisfied: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most favorably in the light of the non-moving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Civ.R. 56(C); Wolffv. Kuralak (Dec. 19, 1991), Cuyahoga App. No. 59569 citing Temple v. WeanUnited, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 16} The moving party has the initial burden of informing the trial court of the basis for its motion and identifying in the record that there is an absence of a genuine issue of material fact concerning an essential element of the opponent's case. Dresher v. Burt (1996),75 Ohio St.3d 280, 292, 662 N.E.2d 264. The moving party must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett (1986), 477 U.S. 317, 106 S.Ct. 2548,91 L.Ed.2d 265.
 {¶ 17} Once the moving party meets its burden, the nonmoving party then has a reciprocal burden to set forth specific facts showing that there is a genuine issue of material fact for trial. A. Doe v. FirstPresbyterian Church (USA) (1998), 126 Ohio App.3d 358, 364, 710 N.E.2d 367; Civ.R. 56(E). Nonmoving parties may not rest on the mere allegations of their pleadings. Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. In the case at bar, the pertinent statute is R.C. 5302.17,[2] which provides: "A deed conveying any interest in real property to a husband and wife, and in substance following the form set forth in this section, when duly executed in accordance with Chapter 5301. of the Revised Code, creates an estate by the entireties in the grantees, and upon the death of either, conveys such interest to the survivor, his or her separate heirs and assigns."
 {¶ 18} In 1984, the Ohio Supreme Court decided Central Nat'l Bankof Cleveland v. Fitzwilliam (1984), 12 Ohio St.3d 51, in which it determined that marital property, held by the spouses as an estate by the entireties, could not be the subject of foreclosure by a judgment lien creditor of only one spouse. See State v. Parker (Nov. 21, 1986), Lake App. No. 11-162. The Fitzwilliam decision, however, is silent on the issue now before this court, namely, what impact, if any, does a divorce between tenants in the entireties have on the validity of a judgment lien obtained before divorce. Just months before Fitzwilliam,[3] the case ofFleming v. Mayer (Feb. 29, 1984), Hamilton App. No. C-830310, was decided. The acts in Fleming are quite similar to those in the case at bar. In Fleming, Judith and Albert Mayer were married and owned marital property which they purchased in 1979. The property was held by the Mayers as tenants by the entireties. In 1982, plaintiffs obtained a certificate of judgment against Judith only. Later that same year, plaintiffs filed suit to foreclose on the Mayers' property in order to enforce the judgment against Judith. While the foreclosure action was pending, the Mayers were divorced.[4] Before the court decided the case, plaintiffs argued that the divorce nullified the estate by the entireties and thus left Judith with an interest they could foreclose on. The trial court agreed and granted plaintiffs' motion for summary judgment.
 {¶ 19} On appeal, however, the court reversed and stated: "By the time the court decided their motion for summary judgment appellees were no longer husband and wife, and therefore could not hold the property in question as tenants by the entireties. Prior to the dissolution of her marriage Judith's interest in the estate by the entireties could not be attached by creditors that were solely her's. * * * [I]n order for Judith Mayer to have an interest in the property which can be foreclosed upon it must have come into existence upon her divorce from Albert Mayer."Fleming at *3, *8.
 {¶ 20} And in Koster v. Boudreaux (1982), 11 Ohio App.3d 1, the court held that "a lien which reflects a judgment against an individual spouse has no effect when filed against real property which the debtor-spouse holds by the entireties with his/her non-debtor-spouse."Koster, supra, at 3 citing Donvito v. Criswell (1982), 1 Ohio App.3d 53,57.
 {¶ 21} In the case at bar, it is agreed that when the Duses purchased the Brecksville property in April 1985, they held that property as tenants in the entireties. It is also agreed that Park West obtained and filed its judgment lien against Laszlo in 1995 while the Duses were still married and tenants in the entireties. In order for Park West to have an interest in the Brecksville property which can be foreclosed upon, the interest must have come into existence upon or after their divorce. Because Park West's interest arose before the divorce, it cannot have any interest in the property; thus the trial court did not err in granting Katalin's motion for summary judgment. Park West's first assignment of error is overruled.
 {¶ 22} The next question is whether Buckingham's claim of $43,000 in attorney fees referred to in the divorce decree is an enforceable judgment lien against the property. We are first compelled to address an issue not argued in the lower court or here on appeal.[5] In Goldfussv. Davidson, 79 Ohio St.3d 116, 1997-Ohio-401:
 {¶ 23} In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings. * * * We therefore hold that in appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.
Id., at syllabus.
 {¶ 24} We find the case at bar to be one of those extremely rare cases where the plain error doctrine applies. According to the divorce decree, filed in October 1997, the court awarded Katalin $43,000 in attorney fees because much of those fees "were incurred as a result of Defendant's failure to provide appropriate discovery * * *. * * * The real estate * * * shall be immediately listed for sale * * * [and] [f]rom the remaining proceeds of sale, Plaintiff shall be paid the following monies, to wit: * * * The sum of $43,000 as and for attorney fees awarded to her * * *." Divorce Decree Vol. 1033 pp. 0709, 0712.
 {¶ 25} A "judgment creditor" is a person "who has obtained a judgment against his debtor, under which he can enforce execution." Black's Law Dictionary, 5th Ed. West Publishing Co., 1989, p. 758. Typically, a civil judgment "must set forth the party who owes the debt, the party to whom the debt is owed, and the exact amount owed." Schraderv. Schrader, (April 4, 2001), Medina App. No. C.A. NO. 3084-M; R.C.2329.02, generally. A divorce decree constitutes a civil judgment pursuant to Civ.R. 54(A). Schrader, supra; Zalewski v. Chalasta (Aug. 18, 1994), Cuyahoga App. No. 66102.
 {¶ 26} Further, R.C. 2329.02 provides in pertinent part:
Any judgment or decree rendered by any court of general jurisdiction, including district courts of the United States, within this state shall be a lien upon lands and tenements of each judgment debtor within any county of this state from the time there is filed in the office of the clerk of the court of common pleas of such county a certificate of such judgment, setting forth the court in which the same was rendered, the title and number of the action, the names of the judgment creditors and judgment debtors, the amount of the judgment and costs, the rate of interest, if the judgment provides for interest, and the date from which such interest accrues, the date of rendition of the judgment, and the volume and page of the journal entry thereof.
 {¶ 27} The statute also outlines the procedure for converting judgments into liens. It is well settled that unless a certificate of judgment is filed in accordance with R.C. 2329.02, no judgment lien is created or enforceable against real property. Dressler v. Bowling
(1986), 24 Ohio St.3d 14; see Wood v. Galpert (1964), 199 N.E.2d 900. "[N]o judgment can become a valid lien on property unless a certificate of judgment is entered of record." Allstate Financial Corp. v. WestfieldService Management Co. (1989), 62 Ohio App.3d 657, 669; Olin v.Hungerford (1840), 10 Ohio 268; Vickroy v. Vickroy (1988),44 Ohio App.3d 210; Campbell v. Campbell (Mar. 26, 1992), Gallia App. No. 91 CA 17.
 {¶ 28} The divorce decree in this case constitutes a judgment. Because it was recorded pursuant to statute, it constitutes a judgment lien. However, contrary to Buckingham's claim, the Duses' recorded divorce decree does not provide Buckingham with the status of a judgment lien creditor. The decree gives only Katalin a $43,000 judgment lien against the property, not Buckingham. Since the decree makes no mention of Buckingham and does not direct Katalin to do anything relative to Buckingham once she receives the money from the property sale, it creates no rights in Buckingham whatsoever. Further, the record contains no evidence that Buckingham ever filed a certificate of judgment for its attorney fees in accordance with R.C. 2329.02.
 {¶ 29} We hold that, as a matter of law Buckingham does not have a lien. Buckingham, therefore, does not possess a $43,000 lien for its attorney fees in this case; only Katalin is a lien holder. Even though Buckingham is not entitled to summary judgment, we, nonetheless, must reverse the trial court's order entering judgment in favor of Katalin Dus. The trial court erred in granting Katalin summary judgment when she never moved for such a judgment. Marshall v. Aaron (1984),15 Ohio St.3d 48, syllabus; Civ.R. 61; App.R. 12(B) and (D); Bostic v.Connor (1988), 37 Ohio St.3d 144. Accordingly, we sustain this part of Buckingham's assignment of error. We vacate the judgment entered in favor of Katalin Dus.
 {¶ 30} For all the foregoing reasons, Park West's first assignment of error is overruled. Buckingham's sole assignment of error is sustained in part.
II. The Trial Court Abused Its Discretion In Allowing The Defendant, Katalin Dus, To File An Answer To The Cross-claim And Motion For Summary Judgment Just Prior To The Judicial Sale Of The Subject Property.
 {¶ 31} In its second and last assignment of error, Park West argues the trial court erred in allowing Katalin to file her answer to its cross-claim and to file a motion for summary judgment against Park West out of rule. First, we note that Park West did not object to Katalin's filing her motion for summary judgment. The record shows Park West's objection only to Katalin's answer to its cross-claim, not to her summary judgment motion.
 {¶ 32} In its objection, Park West argued Katalin's untimely answer was prejudicial because it caused the foreclosure sale to be postponed. Civ.R. 6(B)(2) provides, "When by these rules * * * an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion * * * upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect * * *."
A trial court's Civ.R. 6(B)(2) determination is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of discretion. Miller v. Lint (1980),62 Ohio St.2d 209, 213-214, 16 O.O.3d 244, 247, 404 N.E.2d 752, 754-755;Evans v. Chapman (1986), 28 Ohio St.3d 132, 135, 28 OBR 228, 231,502 N.E.2d 1012, 1015. The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Rock v. Cabral (1993),67 Ohio St.3d 108, 112, 616 N.E.2d 218, 222." State ex rel.Lindenschmidt, v. Board of Commissioners of Butler County (1995),72 Ohio St.3d 464, 465, 1995-Ohio-49.
In conjunction with this standard, additional factors of a showing of a meritorious defense as well as the showing of an absence of prejudice to the plaintiff can also be considered. `The determination of whether neglect is excusable or inexcusable must take into consideration all such surrounding facts and circumstances.' * * * Marion Production CreditAssn. v. Cochran (1988), 40 Ohio St.3d 265, 271, 533 N.E.2d 325. "Courts must also remain mindful of the admonition that cases should be decided upon their merits, where possible, rather than on procedural grounds." Id.
Fontanella v. Ambrosio, Trumbull App. No. 2001-T-0033, 2002-Ohio-3144.
 {¶ 33} In its objection to Katalin's motion for leave, Park West argued, just as it does here in this appeal, that Katalin failed to show excusable neglect in filing her answer late. Nonetheless, the trial court, without opinion, apparently determined either that Katalin had shown the requisite excusable neglect or that Park West had failed to show prejudice by her delay in answering its cross-claim.[6] We agree.
 {¶ 34} The record shows that in her motion for leave, Katalin argued that her untimely answer did not prejudice Park West, because she had viable defenses against its cross-claim. Katalin further explained that she did not timely file an answer because court foreclosure actions usually determine only the rights and interests of the first mortgage holder, not other parties, like the cross claimants here.
 {¶ 35} The fact remains that Katalin did have a viable and complete defense against Park West's cross-claim. As a matter of law, when Park West's lien supposedly attached to the property, Katalin and her husband were still married and held the Brecksville property as tenants by the entireties; therefore, Park West's judgment against Laszlo Dus was unenforceable.
 {¶ 36} Moreover, even if Katalin's reasons for filing an untimely answer do not rise to the level of excusable neglect, we conclude that any error which may have occurred from the delay was harmless. Civ.R. 61; App.R. 12(B) and (D). Bostic, supra. Since the law does not support Park West's cross-claim, we conclude the trial court did not abuse its discretion by allowing Katalin to file her answer when she did. Park West's second assignment of error is without merit.
 {¶ 37} For all the foregoing reasons, Park West's Assignments of Error are overruled. Buckingham's sole Assignment of Error is sustained only as to the trial court's error in entering judgment in favor Katalin Dus, a nonmovant. The trial court's entry granting her judgment is hereby vacated and this matter remanded for further proceedings consistent with this opinion.
Judgment accordingly.
KENNETH A. ROCCO., A.J., CONCURS WITH SEPARATE CONCURRING OPINION;PATRICIA A. BLACKMON, J., CONCURS.
[1] Also named as a defendant was James Rokakis, Cuyahoga County Treasurer, who is not a party to this appeal.
[2] The statute, enacted in 1972, effectively codified the common law estate by the entireties. The statute remained in effect until it was abolished by the enactment of R.C. 5302.20 and R.C. 5302.21 on April 4, 1985.
[3] Decided July 3, 1984.
[4] The Mayers' divorce occurred in 1983.
[5] Even though not argued below, we note that Katalin Dus' answer to Buckingham's cross-claim includes an affirmative defense in which she asserts that Buckingham "has no right or lien against the subject property." ¶ 7.
[6] Park West's cross-claim, filed May 5, 1999, avers that it has a judgment lien against Laszlo Dus. The cross-claim does not mention Katalin or the fact that Park West's cross-claim against her former husband had anything to do with her. On June 9, 1999, Buckingham also filed a cross-claim — this time specifically against Katalin because of its $43,000 attorney fee lien against her interest in the property. Katalin's motion for leave to file an answer to both cross-claims was not filed until April 24, 2000.